AVETA, INC., MMM Holdings, Inc.,
and Preferred Medicare Choice,
Inc., Plaintiffs

v.

Dr. Victor Delgado COLÓN, Defendant.

Civil Action No. 2936–MG.

Court of Chancery of Delaware.

Submitted: Nov. 29, 2007.
Decided: Jan. 15, 2008.

Richard L. Horwitz, Brian C. Ralston, and Kirsten A. Zeberkiewicz, of Potter Anderson & Corroon, LLP, Wilmington, DE; of Counsel: David L. McClenahan, Patrick J. McElhinny, and Paul C. McCaffrey, of Kirkpatrick & Lockhart Preston Gates Ellis, LLP, Pittsburgh, PA, for Plaintiffs.

Denise Seastone Kraft and Joseph B. Cicero, of Edwards Angell Palmer & Dodge, LLP, Wilmington, DE; of Counsel: Dennis M. Reznick, of Edwards Angell Palmer & Dodge, LLP, Short Hills, NJ, for Defendant.

### OPINION

CHANDLER, Chancellor.

Delaware's courts frequently repeat the adage that only in rare cases can a defendant successfully defeat a plaintiff's choice of forum.[1] It is even rarer that a defendant can defeat a plaintiff's choice of forum that is mandated by a contractual forum selection clause. Because defendant here has made a sufficiently particularized showing of overwhelming hardship, I conclude that this is one of those especially rare cases and affirm the Master's decision to stay this matter.

## I. BACKGROUND

In August 2006, Aveta, Inc., a Delaware corporation and provider of Medicare services, purchased Preferred Medicare Choice, Inc. ("PMC"), a Medicare provider based in Puerto Rico and effected this purchase through a merger with its subsidiary, MMM Holdings, Inc. ("MMM," or, collectively with Aveta and PMC, "plaintiffs" or simply "Aveta"). Pursuant to the purchase agreement governing the transaction, MMM acquired all the stock of PMC's Class B shareholders, a group comprised of physicians alone.

Dr. Victor Delgado Colón ("Delgado" or "defendant"), a physician practicing in Manatí, Puerto Rico, owned 30,000 Class B shares at the time of the purchase. Plaintiffs allege that Delgado received about $540,000 for his shares. Concerned because primary care physicians greatly influence where their patients enroll for Medicare coverage, Aveta sought to prevent the Class B shareholders from walking away with their patients after the consummation of the transaction. Thus, physicians who sold their Class B shares had to enter non-competition agreements with plaintiffs in which they promised not to invest in competing health care plans and not to encourage or induce their patients to terminate their enrollment in PMC's plan for a period of two years.

---

1. See, e.g., Berger v. Intelident Solutions, Inc., 906 A.2d 134, 135 (Del.2006); Rapoport v. Litig. Trust of MDIP Inc., C.A. No. 1035-N, 2005 WL 3277911, at *2 (Del.Ch. Nov. 23, 2005); Sun–Times Media Group, Inc. v. Royal & SunAlliance Ins. Co. of Can., C.A. No. 06C–11–108 RRC, 2007 WL 1811266, at *5 (Del.Super.Ct. June 20, 2007) ("It is only the "rare" case where a plaintiff's choice of forum is defeated.").

Notwithstanding this agreement, Delgado affiliated himself with a competitor of PMC early in 2007. Moreover, Aveta alleges that he lured hundreds of patients away from PMC in the process. As a result of this purported breach, Aveta initiated this suit on May 3, 2007, seeking compensatory damages and a permanent injunction specifically enforcing the non-competition agreement. Delgado obtained an extension to retain counsel and filed a motion to dismiss the complaint on July 27, 2007. Plaintiffs answered Delgado's motion on August 31, 2007. On September 6, however, Delgado filed a declaratory judgment action against plaintiffs in the Commonwealth Court of Puerto Rico seeking a declaration that the non-competition agreement is unenforceable under Puerto Rican law (the law that the parties agree governs the substance of the contract).

The matter is complicated because, in addition to the non-competition agreement, the contract also contained a forum selection clause that provided:

> Any Action or Proceeding based upon, arising out of or relating to this letter agreement may be brought in the federal and state courts located in the State of Delaware, and each of the parties irrevocably submits to the exclusive jurisdiction of such courts in any such Action or Proceeding, waives any objection it may now or hereafter have to venue or to convenience of forum, agrees that all claims in respect of the Action or Proceeding shall be heard and determined only in any such court and agrees not to bring any action or proceeding arising out of or relating to this letter agreement or any transaction contemplated hereby in any other court. The

parties agree that either or both of them may file a copy of this paragraph with any court as written evidence of the knowing, voluntary and bargained agreement between the parties irrevocably to waive any objections to venue or to convenience of forum. Process in any Action or Proceeding referred to in the first sentence of this paragraph may be served on any party anywhere in the world.

Aveta contends that this forum selection clause is determinative and effectively bars Delgado from proceeding with the suit in Puerto Rico. Delgado disagrees. He contends that he should not be bound by this forum selection clause because the negotiation process was flawed. Delgado, who is not fluent in English, never read the agreement, was never provided with a copy in either English or Spanish, and was never told that by signing he agreed to the exclusive jurisdiction in Delaware. The son of one of the Class A controlling shareholders simply called Delgado and told him he had to sign an agreement to receive his funds for the sale of his shares. Delgado concedes that he signed the agreement, but maintains that enforcement of the forum selection clause would impose an overwhelming hardship on him.

On September 26, 2007, Master Sam Glasscock III heard oral argument on Delgado's motion and issued a final bench report. In this report, the Master declined to dismiss for want of jurisdiction or for lack of process because he found Delgado's argument that he never read the agreement unpersuasive.[2] Nevertheless, the Master decided to stay the first-filed Delaware action to allow the Puerto Rican case to move forward. He emphasized

---

**2.** Transcript of Hearing and Ruling on Motion to Dismiss and Motion to Stay Discovery at 61–62 [hereinafter "Trans."]. Plaintiffs have mischaracterized this conclusion as a definitive statement that the forum selection clause is enforceable. On the contrary, the Master

merely found that the clause was not unenforceable on its face. *See* Trans. at 62 ("It may very well be that should we go forward with respect to other portions of the agreement, Doctor Delgado can show that in fact equity requires that that agreement not be

that the enforceability of the non-competition agreement was an issue of first impression under Puerto Rican law that implicated public policy concerns about the doctor/patient relationship.

Plaintiffs filed exceptions to the Master's report on October 5, 2007. Specifically, plaintiffs took exception to the Master's decision to stay the case pending the Puerto Rican court's determination of the enforceability of the non-competition agreement. Plaintiffs' argument is twofold: first, the stay is inconsistent with the Master's ruling that the forum selection clause is enforceable; second, Delgado has not shown sufficient hardship to defeat the plaintiffs' choice of forum under a *forum non conveniens* analysis. Briefing on plaintiffs' exceptions was complete on November 29, 2007, and I now conclude that the Master's decision to stay is correct.

## II. ANALYSIS

### A. Standard of Review

■■■■ The Court of Chancery has "both inherent and statutory authority to refer any matter within the court's jurisdiction to a master," but the master's rulings "are not final until reviewed and adopted by a judge."[3] When considering objections to a master's report, this Court reviews *de novo* the master's legal and factual conclusions.[4] Where, as here, neither party takes exception to any of the master's factual findings, the Court "may review the record *de novo* accepting the master's facts in the same way that the judge would resolve a dispute presented on a stipulated set of facts."[5]

### B. Legal Standards of Forum Non Conveniens

■■■■ Delaware courts afford a great deal of respect to a plaintiff's choice of forum,[6] and this respect should be even more stalwart where both parties have agreed in advance to a forum by contractual provision.[7] Nevertheless, the doctrine of *forum non conveniens* permits a court to decline "to hear a case despite having jurisdiction over the subject matter and

enforced against him because of the circumstances. . . . But for purposes of jurisdiction, I don't think that the affidavit that has been filed here is sufficient to overcome the agreement that was made that this court should have jurisdiction.").

3. *DiGiacobbe v. Sestak*, 743 A.2d 180, 181 (Del.1999).

4. *Id.* at 184; *Sutherland v. Dardanelle Timber Co.*, C.A. No. 671–N, 2006 WL 1451531, at *7 (Del.Ch. May 16, 2006).

5. *DiGiacobbe*, 743 A.2d at 184; *see also Dolan v. Villages of Clearwater Homeowner's Ass'n, Inc.*, C.A. No. 097–S, 2005 WL 2810724, at *1 (Del.Ch. Oct. 21, 2005).

6. *See, e.g., Chrysler First Bus. Credit Corp. v. 1500 Locust Ltd. P'ship*, 669 A.2d 104, 108 (Del.1995); *Am. Legacy Found. v. Lorillard Tobacco Co.*, C.A. No. 19406, 2002 WL 927383, at *4 (Del.Ch. Apr. 29, 2002) (noting great respect given to plaintiff's choice of forum).

7. Both parties appear to agree that a *forum non conveniens* analysis is the appropriate method by which this Court should consider Delgado's challenge. Generally under Delaware law, "forum selection clauses are *prima facia* valid and should be enforced unless the clause is shown by the resisting party to be unreasonable under the circumstances." *HealthTrio, Inc. v. Margules*, C.A. No. 06C–04–196, 2007 WL 544156, at *3 (Del.Super.Ct. Jan. 16, 2007) (citing *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972)). For the purpose of this Opinion, I adopt the parties' use of the *forum non conveniens* doctrine to ascertain whether enforcement of the clause is unreasonable under the circumstances. Other courts have rejected use of the *forum non conveniens* doctrine for this purpose. *See, e.g., Pelleport Investors, Inc. v. Budco Quality Theatres, Inc.*, 741 F.2d 273, 280 (9th Cir.

the parties"[8] when there is a similar action pending elsewhere and when "considerations of convenience, expense, and the interests of justice dictate that litigation in the forum selected by the plaintiff would be unduly inconvenient, expensive or otherwise inappropriate."[9] The doctrine is not statutory[10] and is only employed in the discretion of the trial court judge.[11]

This discretion, however, is far from unfettered. Rather, to achieve a stay or dismissal for *forum non conveniens*, a defendant must demonstrate that litigating in the plaintiff's chosen forum would present an overwhelming hardship.[12] Indeed, despite linguistic appearance to the contrary, *forum non conveniens* is not a doctrine of convenience; it is a doctrine of significant, actual hardship.[13] Thus, the Court need not and should not compare Delaware to the alternative forum to determine "which is the more appropriate location for this dispute to proceed."[14]

1984) (rejecting use of the "balancing of convenience test" in the *forum non conveniens* doctrine and holding, "[t]o establish unreasonableness of a forum selection clause the party resisting enforcement of the clause has a heavy burden of showing that trial in the chosen forum would be so difficult and inconvenient that the party effectively would be denied a meaningful day in court"). As discussed throughout this decision, however, Delaware does not conceive of the *forum non conveniens* doctrine as a mere "balancing of convenience test." By requiring the strict, heavy burden of a particularized showing of overwhelming hardship, the Delaware standard of *forum non conveniens* is probably tantamount to the federal standard required to avoid a forum selection clause.

8. *Chrysler First*, 669 A.2d at 106.

9. *Sumner Sports, Inc. v. Remington Arms Co., Inc.*, C.A. No. 11841, 1993 WL 67202, at *7 (Del.Ch. Mar. 4, 1993) (quoting *Monsanto Co. v. Aetna Cas. and Surety Co.*, 559 A.2d 1301, 1304 (Del.Super.Ct.1988)).

10. *See Friedman v. Alcatel Alsthom*, 752 A.2d 544, 551 (Del.Ch.1999) (noting that the *forum non conveniens* doctrine originated in Scottish common law). In its original form, the doctrine always led to dismissal of a case, but "Delaware courts have recognized that motions to stay proceedings on the basis of undue inconvenience and hardship are conceptually similar to true *forum non conveniens* motions." DONALD J. WOLFE AND MICHAEL A. PITTENGER, CORPORATE AND COMMERCIAL PRACTICE IN THE DELAWARE COURT OF CHANCERY § 5–2 (supp. 2006).

11. *See Williams Gas Supply Co. v. Apache Corp.*, 594 A.2d 34, 37 (Del.1991) ("A motion to stay or dismiss on grounds of *forum non conveniens* is addressed to the sound discretion of the trial court"); *Tex. Instruments Inc. v. Cyrix Corp.*, C.A. No. 13288, 1994 WL 96983, at *2 (Del.Ch. Mar. 22, 1994); *Sumner Sports*, 1993 WL 67202, at *3.

12. *Berger v. Intelident Solutions, Inc.*, 906 A.2d 134, 136 (Del.2006). There is some debate about whether the standard is different for achieving a stay or a dismissal. *See Brandin v. Deason*, C.A. No. 2123–VCL, 2007 WL 2088877, at *3 n. 13 (noting debate and comparing cases using different standards in each context). It is unnecessary to decide the issue here because, as discussed below, I have concluded that Delgado has demonstrated the more onerous standard of overwhelming hardship.

13. *Warburg, Pincus Ventures, L.P. v. Schrapper*, 774 A.2d 264, 267 (Del.2001) ("[A] complaint will not be dismissed on the group of *forum non conveniens* without a showing of overwhelming hardship."); *accord* 14D CHARLES ALAN WRIGHT, ARTHUR R. MILLER, AND EDWARD H. COOPER, FEDERAL PRACTICE AND PROCEDURE § 3828 (supp. 2007) ("Although the doctrine frequently is discussed in terms of 'convenience,' it probably is better thought of as a doctrine about avoiding 'undue burden.'").

14. *Mar–Land Indus. Contractors Inc. v. Caribbean Petroleum Ref., L.P.*, 777 A.2d 774, 779 (Del.2001); *see also Candlewood Timber Group, LLC v. Pan Am. Energy, LLC*, 859 A.2d 989, 998–99 (Del.2004) (reversing decision of Court of Chancery that compared the relative interests of Argentina and Delaware in adjudicating a dispute because the presence of overwhelming hardship is the only "critical issue").

The Court's search must remain for overwhelming hardship.

 Generally, when evaluating whether a defendant has made a showing of sufficient hardship, a court is guided by a series of so-called *Cryo–Maid*[15] factors:

(1) The applicability of Delaware law;

(2) The relative ease of access of proof;

(3) The availability of compulsory process for witnesses

(4) The pendency or non-pendency of a similar action or actions in another jurisdiction;

(5) The possibility of a need to view the premises; and

(6) All other practical considerations that would make the trial easy, expeditious, and inexpensive.[16]

None of these factors is in any way determinative.[17] Nor need a defendant show that a majority of the factors tips in its favor.[18] Instead, the key inquiry is whether the defendant can show through any of the factors that litigating in Delaware would "actually cause[ ] ... significant hardship and inconvenience."[19]

 Finally, a defendant's showing of hardship must be particularized.[20] This standard does not, however, require fact-finding hearings or nuanced details. The entire purpose of the *forum non conveniens* doctrine is to relieve defendants from the undue burdens of litigating in an especially inconvenient forum.[21] That purpose would be subverted if a defendant had to endure costly, protracted proceedings in order to avail itself of the doctrine in the first place.[22] Consequently, motions to stay or dismiss can be and are decided on facts presented in affidavits.[23] To es-

---

**15.** *See Gen. Foods Corp. v. Cryo–Maid, Inc.*, 198 A.2d 681, 684 (Del.1964).

**16.** *Ryan v. Gifford*, 918 A.2d 341, 351 (Del.Ch. 2007).

**17.** *Berger v. Intelident Solutions, Inc.*, 906 A.2d 134, 136 (Del.2006).

**18.** *Chrysler First Bus. Credit Corp. v. 1500 Locust Ltd. P'ship*, 669 A.2d 104, 108 (Del. 1995) ("[I]t does not matter whether only one of the *Cryo–Maid* factors favors defendant or all of them do.").

**19.** *Id.*

**20.** *Candlewood*, 859 A.2d at 994.

**21.** *Accord* 14D CHARLES ALAN WRIGHT, ARTHUR R. MILLER, AND EDWARD H. COOPER, FEDERAL PRACTICE AND PROCEDURE § 3828 (supp. 2007) (identifying purpose of doctrine as "protect[ion of] defendants and the ... courts from expending resources on matters having little connection to this country from litigation in an inconvenient forum").

**22.** *Accord Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 258, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981) ("The Court of Appeals found that the problems of proof could not be given any weight because Piper and Hartzell failed to describe with specificity the evidence they would not be able to obtain if trial were held in the United States. It suggested that defendants seeking *forum non conveniens* dismissal must submit affidavits identifying the witnesses they would call and the testimony these witnesses would provide if the trial were held in the alternative forum. Such detail is not necessary. Piper and Hartzell have moved for dismissal precisely because many crucial witnesses are located beyond the reach of compulsory process, and thus are difficult to identify or interview. Requiring extensive investigation would defeat the purpose of their motion.").

**23.** *See, e.g., Tex. Instruments Inc. v. Cyrix Corp.*, C.A. No. 13288, 1994 WL 96983, at *1 (Del.Ch. Mar. 22, 1994) (granting motion to stay on *forum non conveniens* grounds based on facts submitted through affidavits); *accord Alcoa S.S. Co. v. M/V Nordic Regent*, 654 F.2d 147, 158–59 (2d Cir.1980) (en banc) ("[I]t is the well established practice in the Southern District of New York to decide such motions on affidavits."); *Varnelo v. Eastwind Transport, Ltd.*, No. 02Civ.2084(KMW)(AJP), 2003 WL 230741, at *4 (S.D.N.Y. Feb. 3, 2003).

tablish overwhelming hardship with particularity, a defendant should identify particular, specific evidence necessary to its case that it will be unable to produce in Delaware.[24]

### C. Application of Doctrine

 Delgado is a primary care physician in Puerto Rico who has never been to Delaware, who has no connection to Delaware other than the forum selection clause, and who does not speak English fluently. At issue in this case is a contract based on Puerto Rican law that implicates the relationship between doctors and their patients and that was allegedly breached in Puerto Rico. Because consideration of several of the *Cryo–Maid* factors demonstrate with particularity that litigating this case in Delaware would present actual, overwhelming hardship to Delgado, I agree with the Master that the case should be stayed pending resolution of the action in Puerto Rico.[25]

#### 1. Delaware law does not apply

 Both plaintiffs and defendant agree that the enforceability of the non-competition agreement will be evaluated under Puerto Rico's—not Delaware's—law. It is true that "Delaware courts often decide legal issues—even unsettled ones—under the law of other jurisdictions," and

that the mere application of foreign law is insufficient reason to utilize the *forum non conveniens* doctrine.[26] The Supreme Court's broad statements notwithstanding,[27] the fact that courts continue to consider this *Cryo–Maid* factor must mean that it retains some viability and that it is possible a defendant can demonstrate overwhelming hardship under it.

 This is such a case. Litigating this dispute will require consideration of Puerto Rican precedent—precedent that is recorded in Spanish, that is made in a Civil Law jurisdiction, and that is not always readily available. Aveta argues that the Supreme Court rejected a similar argument in *Candlewood Timber Group v. Pan American Energy, LLC.* There, Justice Jacobs wrote, "[t]he expense and inconvenience of translating pertinent legal precedent, of retaining foreign lawyers, and of producing foreign law experts to testify at trial, has not been shown to be of material weight in an overwhelming hardship analysis *in this particular case.*"[28] As plaintiffs themselves note, however, "the hardship inquiry under the *forum non conveniens* analysis is focused on the defendant, not on the court."[29] It is clear that this Court is quite capable of understanding and applying the law of other jurisdictions, but it is the hardship that the

---

24. *Berger v. Intelident Solutions, Inc.*, 906 A.2d 134, 136 (Del.2006); *Ryan v. Gifford,* 918 A.2d 341 (Del.Ch.2007) (refusing to stay or dismiss where "[d]efendants fail to identify necessary witnesses not subject to process"). *But see In re Chambers Dev. Co., Inc. S'holders Litig.,* C.A. No. 12508, 1993 WL 179335, at *6 (Del.Ch. May 20, 1993) (noting that "a certain amount of speculation is reasonable and appropriate").

25. There are no premises to view in this case and, therefore, I do not address that *Cryo–Maid* factor.

26. *Berger,* 906 A.2d at 137. *But see Mt. Hawley Ins. Co. v. Jenny Craig, Inc.,* 668 A.2d 763,

769 (Del.Super.Ct.1995) (suggesting that "cutting edge" issues of foreign law might affect analysis under this *Cryo–Maid* factor).

27. *See Taylor v. LSI Logic Corp.,* 689 A.2d 1196, 1200 (Del.1997) ("The application of foreign law is not sufficient reason to warrant dismissal under the doctrine of *forum non conveniens.*").

28. 859 A.2d 989, 1002 (Del.2004) (emphasis added).

29. Pls.' Opening Br. at 18.

defendant would face that is relevant. In *Candlewood,* the defendant, Pan American Energy, was an "international business" and a "leading regional player in oil and gas production" that had "tremendous resources at its disposal."[30] In fact, as Justice Jacobs carefully noted, "[o]n three occasions in recent years Pan American [had] been a litigant in the United States, including in a Court of Chancery Trial...."[31] Delgado is obviously not an international business, does not have tremendous resources at his disposal, and has no contacts whatsoever with Delaware.[32]

Plaintiffs further contend that Delgado's complaints of hardship in presenting Puerto Rico law to this Court are exaggerated. Specifically, plaintiffs note that both parties have already retained counsel in Puerto Rico and can easily locate and translate necessary cases. Moreover, plaintiffs suggest that there are very few cases on point. These arguments fail. First, plaintiffs seem to suggest that *they* would not face a hardship in litigating in Delaware, but the *forum non conveniens* analysis does not focus on hardship to plaintiffs. Second, the fact that defendant has retained counsel in Puerto Rico is irrelevant. There is no suggestion that Delgado's Puerto Rican counsel will be able or willing to assist with a case in Delaware. Finally, at this early stage it is unclear how much research will be necessary to decide this case. It is one thing to require a sophisticated, international company to provide translations and analyses of foreign law as the Court struggles to predict what a foreign court would do, but Delga-

do is an individual. It would present an overwhelming hardship to ask the defendant to stand ready to defend this action and to absorb all of the costs of doing so when it is unclear *ex ante* how much help this Court will need in interpreting the law of Puerto Rico.

2. No evidence is located in Delaware and the vast majority is located in Puerto Rico

■ Most, if not all, of the evidence relevant to this dispute is located in Puerto Rico. No relevant evidence is located in Delaware. Those facts alone, however, are insufficient to win a stay or dismissal under the *forum non conveniens* doctrine. The relevant evidence in this case will be either testimonial or documentary. As then-Vice Chancellor Steele noted in *Asten v. Wangner,* "[m]odern methods of information transfer render concerns about transmission of documents virtually irrelevant."[33] Delgado has not established that he would face overwhelming hardship by having to transmit the necessary documentary evidence to Delaware.

With respect to the testimonial evidence, however, Delgado does face an undue hardship. There are both legal and factual issues lurking in this case. The primary legal issue, of course, is the enforceability of the non-competition agreement. There are also significant factual issues that will require fact-finding that includes testimony. Delgado appears to challenge both the formation of the contract and the allegation that he has breached it. To the extent he wishes to challenge the forma-

---

**30.** *Candlewood,* 859 A.2d at 993–94.

**31.** *Id.*

**32.** *See* Aff. of Dr. Victor Delgado Colón at ¶ 13 [hereinafter "Delgado Aff. at ——"] ("I have had no contacts with the State of Delaware. I have never traveled to Delaware, transacted any business in the Delaware [sic], nor supplied any services in Delaware. I have no bank accounts, nor do I own any property in Delaware.").

**33.** C.A. No. 15617–NC, 1997 WL 634330, at *3 (Del.Ch. Oct. 3, 1997).

tion of the contract, he has stated that he wants to call as witnesses Ms. Raquel Arroyo, a service provider employed by PMC who initially brought the agreement to him to be signed, Mr. Bengoa–López, a PMC shareholder who told Delgado he had to sign the agreement, and other PMC executives and shareholders who played a role in gathering the necessary signatures.[34] To the extent Delgado wishes to challenge plaintiffs' claim that he lured his patients away from their health care plans, Delgado intends to call some of those patients as witnesses.[35] Finally, to the extent he wishes to challenge plaintiffs' claim that he has associated himself improperly with another plan provider, Delgado intends to call representatives from the other provider.[36] All of these specifically identified witnesses reside in Puerto Rico.[37]

In *Trinity Investment Trust, LLC v. Morgan Guarantee Trust Co. of New York*,[38] the Superior Court granted a motion to dismiss under the doctrine of *forum non conveniens* in a similar situation. There, Judge Alford reasoned

> The transaction upon which this suit is brought was negotiated in Japan, as such many, if not all, of the relevant documents will be located there. The lawyers who negotiated the transaction

are Japanese lawyers who reside there. Further, even those witnesses who do not live in Japan, do not appear to reside in Delaware, but rather in New York. In addition, as the contract was negotiated in Japan by Japanese lawyers, many documents pertaining to the drafting and the pre- and post-negotiating sessions of the contract still exist in Japan. In fact, much of the documentation was drafted in Japanese; i.e., engineering reports, appraisals of the building, and the location and conditions of the market. Thus, access to proof may present a problem if this action is maintained in Delaware.[39]

Here, the transaction was negotiated in Puerto Rico, and all of the necessary documents and witnesses are located either in Puerto Rico or at Aveta's headquarters in New Jersey.

■ Plaintiffs suggest that Delgado could introduce this evidence by means of written or videotaped deposition.[40] That may be true, but depositions serve as poor proxies for live testimony because the fact finder loses the opportunity to effectively and contemporaneously evaluate the credibility of the witness.[41] A court of equity may not willfully ignore substantial issues of fairness, and considering the relative

34. Delgado Aff. at ¶¶ 15–16.

35. *Id.* at ¶ 17.

36. *Id.* at ¶ 18.

37. *Cf. Friedman v. Alcatel Alsthom*, 752 A.2d 544, (Del.Ch.1999) ("The fact that witnesses and evidence are located far from Delaware may support a finding of hardship. But when defendants possess substantial resources this burden is 'substantially attenuated.'") Here, unlike in *Friedman*, the defendant is not a "large multi-national corporation" with "adequate financial resources that would enable it to easily transport witnesses and documents." *Id.*

38. C.A. No. 01C–03–005 HLA, 2001 WL 1221080 (Del.Super.Ct. Sept. 28, 2001).

39. *Id.* at *3.

40. *See, e.g., Berger v. Intelident Solutions, Inc.*, 906 A.2d 134, 136 (Del.2006) (suggesting testimony can be introduced via depositions).

41. *Texas Instruments Inc. v. Cyrix Corp.*, C.A. No. 13288, 1994 WL 96983, at *5 n. 6 (Del. Ch. Mar. 22, 1994) ("I reject the suggestion that deposition testimony would be an adequate substitute for live trial testimony."); *In re Chambers Dev. Co., Inc. S'holders Litig.*, C.A. No. 12508, 1993 WL 179335, at *6 (Del. Ch. May 20, 1993) ("While this Court frequently allows for methods other than live testimony, i.e., depositions and written interrogatories, there is no question that from a decision maker's perspective such methods are poor substitutes and certainly not equiva-

size and resources of the defendant in this case, I conclude that Delgado would face an overwhelming hardship if forced to absorb the considerable expense of flying his numerous witnesses from Puerto Rico to Delaware and boarding them here.[42]

### 3. This Court has no ability to compel the attendance of necessary witnesses

Related to the previous factor, Delgado's hardship with respect to offering his evidence is compounded by this Court's inability to compel the attendance of his witnesses. Even if Delgado were willing or able to take on the sizeable costs of transporting his witnesses to Delaware, he will have no power to do so through this Court. Under this *Cryo–Maid* factor, I "must evaluate whether 'another forum would provide a substantial improvement as to the number of witnesses who would be subject to compulsory process.'"[43] Both parties recognize that the Puerto Rico forum would indeed provide for compulsory process over a substantially greater number of potential witnesses.[44]

Plaintiffs argue that the Supreme Court has suggested that a defendant must show with particularity that his witnesses would refuse to appear in Delaware voluntarily.[45] Because Delgado has not made such a showing here, I cannot conclude that he has demonstrated overwhelming hardship under this particular *Cryo–Maid* factor. Nevertheless, the importance of compulsory process was made very clear in *Texas Instruments Inc. v. Cyrix Corp.*[46] There, plaintiff Texas Instruments attempted to moot defendant's argument that it would be unable to compel the attendance of necessary witnesses by promising to bring to Delaware all the Texas Instrument employees defendant identified as trial witnesses.[47] Then–Vice Chancellor Jacobs pointedly stated that although an employer might have the "practical ability to command its employees to appear at a trial in Delaware, . . . practical ability is not equivalent to having the legal power to compel a witness's attendance."[48] That argument and sense of the significance of compulsory process carry even more weight in this case. Here, though some of Delgado's identified witnesses are employees of plaintiffs, plaintiffs have not promised to bring those individuals to Delaware. More importantly, most of the witnesses Delgado has specifically identified (such as his patients) are employees of neither plain-

---

lents."); *Sumner Sports, Inc. v. Remington Arms Co.*, C.A. No. 11841, 1993 WL 67202, at *5 (Del. Ch. Mar. 4, 1993) ("Deposition testimony, videotaped or otherwise, is a poor substitute for live testimony.").

**42.** *Cf. Gen. Foods Corp. v. Cryo–Maid, Inc.*, 194 A.2d 43, 45 (Del.Ch.1963) (comparing relative size of parties before determining to stay a first-filed Delaware action), *aff'd*, 198 A.2d 681 (1964), *overruled on other grounds by Pepsico, Inc. v. Pepsi–Cola Bottling Co.*, 261 A.2d 520 (Del.1969); *see also Williams Natural Gas Co. v. Amoco Prod. Co.*, C.A. No. 11040, 1990 WL 13492, at *9 (noting that the court, "in the course of its *forum non conveniens* analysis, consider[s] the equities (namely, the relative size and wealth of the litigants)").

**43.** *Friedman v. Alcatel Alsthom*, 752 A.2d 544, 554 (Del.Ch.1999).

**44.** *See* Pls.' Opening Br. at 27; Def.'s Answering Br. at 34.

**45.** *Berger v. Intelident Solutions, Inc.*, 906 A.2d 134, 136–37 (Del.2006) ("[A]lthough it would be more convenient for Florida witnesses to give testimony in Florida, they could testify in Delaware by deposition or appear here voluntarily, if requested by Intelident and DFLP.").

**46.** C.A. No. 13288, 1994 WL 96983 (Del.Ch. Mar. 22, 1994).

**47.** *Id.* at *5.

**48.** *Id.*

tiffs nor Delgado. It is true that some of Delgado's witnesses might voluntarily testify, but this Court is not blind to reality and recognizes that Delgado would face significant difficulty in presenting evidence in Delaware.

### 4. There is another similar action pending in Puerto Rico

As noted above, Delgado filed a declaratory judgment action in the Commonwealth Court of Puerto Rico seeking a declaration that the non-competition agreement is unenforceable under Puerto Rican law. This Court has previously recognized that there is little practical difference between an action for specific performance of a contract and a declaratory action seeking a statement of one's rights under the same contract.[49] Thus, this factor does not weigh against granting a stay, because plaintiffs will be able to make the same arguments about the enforceability of the noncompetition agreement in Puerto Rico that they could make here in Delaware.

### 5. Practical considerations such as language barriers and public policy also demonstrate undue hardship

Under this factor, I may consider any number of other problems that would pres-

ent Delgado with an overwhelming burden if forced to litigate in Delaware. I find that two specific practical problems exist that would make litigating in Delaware unfair for Delgado. First, there is a language barrier. As I have noted above, the language issue will present a problem with respect to access to proof, but it is more pervasive. In addition to providing translations of relevant cases and law, Delgado would be forced to hire a translator for his witnesses and, perhaps, to help assist him in communicating with his Delaware counsel.[50] This Court has previously considered language barriers when applying the *forum non conveniens* doctrine,[51] and I conclude that the language barrier in this case is significant.

Second, and perhaps more importantly, this case implicates the doctor-patient relationship, an area rife with public policy concerns. Although the Supreme Court has made it very clear that trial courts should not base stays or dismissals on the relative interests of the competing fora in a *forum non conveniens* analysis, the concept of comity is not dead in Delaware.[52] Thus, this Court must still consider "Delaware's interest and the interest of any foreign jurisdiction in hearing and deciding

---

**49.** *See Asten v. Wangner,* C.A. No. 15617–NC, 1997 WL 634330, at *2 (Del.Ch. Oct. 3, 1997) ("I find it difficult to distinguish between an action in Delaware seeking to declare one's rights and obligations under a settlement agreement from an action in South Carolina where one party requests specific performance of the very same agreement.... In each case, it is certainly necessary for a court or jury to resolve the enforceability of the settlement agreement which is the heart of the dispute.").

**50.** *See* Delgado Aff. at ¶ 2 ("My primary language is Spanish, although I can read and speak English, but not very well, and I often require assistance from a Spanish Speaker

when dealing with other than general conversational matters....").

**51.** *See Sumner Sports, Inc. v. Remington Arms Co.,* C.A. No. 11841, 1993 WL 67202, at *6 (Del.Ch. Mar. 4, 1993) (noting difficulty of hiring French translator for trial testimony); *see also Trinity Inv. Trust, LLC v. Morgan Guar. Trust Co. of N.Y.,* C.A. No. 01C–03–005 HLA, 2001 WL 1221080, at *4 (Del.Super.Ct. Sept. 28, 2001) (noting that Japanese translation would be needed).

**52.** *See McWane Cast Iron Pipe Corp. v. McDowell–Wellman Eng'g Co.,* 263 A.2d 281, 283 (Del.1970) (noting that Delaware Courts can be moved by "considerations of comity and

the controversy, although the interests of another jurisdiction in the dispute should not be a determinative factor." [53] The contract at the center of this dispute purports to limit the ability of physicians to associate themselves with competing health care providers and to prohibit physicians from inducing or encouraging their patients to switch providers. Delgado has explicitly represented to this Court that he intends to challenge the enforceability of this contract on public policy grounds. This is not a case where the corporate law of Delaware is at issue; [54] Delaware has no interest in this dispute. Puerto Rico, on the other hand, certainly has an interest in ascertaining and applying its own public policy.

As the Supreme Court noted in *Candlewood*, however, the relative interests of competing fora are irrelevant to a *forum non conveniens* analysis unless such consideration demonstrates that the defendant will suffer "overwhelming hardship from being required to litigate in Delaware." [55] Here, Delgado has demonstrated that the fundamentally unsettled nature of this precise public policy question makes prediction of what the Puerto Rico courts would do particularly nettlesome. Because Puer-

to Rico has such a pronounced interest in this matter, because Delaware has none whatsoever, and because both parties have acknowledged that this area of Puerto Rico's law is nebulous,[56] I conclude that this factor also indicates overwhelming hardship. It would be unfair and unduly burdensome to force Delgado, a defendant who is not fluent in English, to attempt to convey to this Court the nuanced and unexplored details of the public policy behind the doctor/patient relationship in Puerto Rico, a Spanish-speaking, civil law jurisdiction.

## III. CONCLUSION

This is not a dispute implicating *any* aspect of the substantive law of Delaware. It is not a dispute where *any* of the relevant evidence or witnesses are located in Delaware. It is not a dispute between Fortune 500 companies incorporated in Delaware, and it is not a dispute between corporations at all. In fact, it is not even a dispute that can be explained by the primary actors in English. This is a dispute in which a Delaware-incorporated but New Jersey-based Medicare provider sues an individual physician who does not speak fluent English and who lives and works in

---

the necessities of an orderly and efficient administration of justice").

**53.** Donald J. Wolfe and Michael A. Pittenger, Corporate and Commercial Practice in the Delaware Court of Chancery § 5–2 (supp. 2006); *see also Friedman v. Alcatel Alsthom*, 752 A.2d 544, 556 (Del.Ch.1999) ("Even under a *forum non conveniens* analysis, comity and the necessities of an orderly and efficient administration of justice must be considered.").

**54.** *Cf. Brandin v. Deason*, C.A. No. 2123–VCL, 2007 WL 2088877, at *3 (Del.Ch. July 20, 2007) ("Delaware courts have a sizeable interest in resolving such novel issues to promote uniformity and clarity in the law that governs a great number of corporations. . . .

The presence of complicated issues of unsettled Delaware law, then, strongly favors denial of the motion."). Nor is this a case involving a dispute between two corporate citizens of Delaware. *See Asten,* 1997 WL 634330, at *1 ("No Delaware corporation can, absent unusual circumstances, claim surprise or inconvenience of litigating against another Delaware corporation in the state of incorporation of both parties.").

**55.** *Candlewood Timber Group, LLC v. Pan Am. Energy, LLC,* 859 A.2d 989, 1000 (Del.2004).

**56.** *See, e.g.,* Pls.' Opening Br. at 19 ("there are in fact very few Puerto Rico decisions bearing on the issue").

**616**

Puerto Rico. This is a dispute that centers on the enforceability of a contract executed in Puerto Rico under Puerto Rican law. This is a dispute in which nearly all evidence is located in Puerto Rico. Finally, this is a dispute that implicates the public policy of Puerto Rico towards contractually imposed restraints on the doctor/patient relationship.

It is, therefore, precisely the sort of rare case for which the doctrine of *forum non conveniens* exists. Using the six *Cryo-Maid* factors, I have determined that it would present an overwhelming hardship if the defendant were forced to litigate this matter in Delaware. Delgado has shown with particularity that both he and his case would suffer greatly absent a stay of these proceedings. Though it is certainly true that it would be more appropriate and convenient to allow the Puerto Rico court to decide the issues presented here, I have not based my conclusion to stay on notions of relative interest or mere convenience. On the contrary, based on the particularized showing of the defendant, I have determined that Delgado will face an overwhelming hardship if forced to litigate here. Therefore, this action is stayed for the time period and under the conditions stated in the Master's final bench report.

IT IS SO ORDERED.