# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| PIPAL TECH VENTURES PRIVATE LIMITED, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | C.A. No. 10381-VCG |
| MOENGAGE, INC., | ) ) | |
| Defendant. | ) ) | |

## MEMORANDUM OPINION

Date Submitted: September 1, 2015
Date Decided: December 17, 2015

John G. Harris and David B. Anthony, of BERGER HARRIS LLP, Wilmington, DE, *Attorneys for Plaintiff*.

Sean J. Bellew, of DUANE MORRIS LLP, Wilmington, DE, *Attorney for Defendant*.

GLASSCOCK, Vice Chancellor

This case involves the creation and alleged theft of a valuable computer application. According to the complaint, the application was developed primarily by two employees of a tech corporation, incorporated in and headquartered in India. The application was developed by these employees while they were located in India. The alleged act of theft—removing the source code that embodies the application—occurred in India. After the alleged theft, the employees—Messrs. Dodda and Kumar—placed the stolen application, termed the "MoEngage Product," into a Delaware corporation, the Defendant here. That corporation, MoEngage Inc. ("MoE"), has marketed the application in the United States and abroad, and has solicited and received investments based on the representation that it owns the MoEngage Product.

The Plaintiff is the Indian corporation, Pipal Tech Ventures Private Ltd. ("Pipal Tech"), that is the victim of the alleged theft. In this action, it has sued the defendant Delaware corporation only; counsel for the Plaintiff has acknowledged that it likely cannot obtain jurisdiction here over the employees who actually committed the alleged theft in India. Therefore, the Plaintiff must forgo legal redress in this action for the alleged theft itself—originally sought in Count III of its complaint, which has since been voluntarily dismissed—and for alleged breaches of the employees' employment and non-disclosure agreements, both of which specify Indian law as the controlling authority, and one of which specifies Karnataka, India

1

as the exclusive forum. Nonetheless, Delaware is the Plaintiff's choice of forum. It seeks a declaratory judgment that it is the owner of the application, damages (under the Delaware Uniform Trade Secrets Act and otherwise), and related injunctive relief. The defendant Delaware corporation, MoE, has moved to dismiss on *forum non conveniens* grounds. It concedes that it is not subject to process in India, but agrees to waive that defect. It argues that other than the metaphysical "location" of the application in the custody of a Delaware entity, no other connection exists to Delaware.

A motion to dismiss on the ground that Delaware is an inappropriate forum is addressed to the discretion of the Court. Generally, this Court respects and defers to the Plaintiff's choice of a forum, where a prior pending action in another jurisdiction does not exist. Only where the interests of justice overwhelmingly indicate that another forum is superior will this Court exercise its discretion and dismiss the action. Recent case law, including *Martinez v. E.I. DuPont de Nemours and Co.*[1] and *Hupan v. Alliance One International, Inc.*,[2] has clarified our *forum non conveniens* jurisprudence, and has indicated that the overwhelming hardship standard under which *forum non conveniens* motions are evaluated is not preclusive, but instead sets a high but clearable bar. At first blush, this case—involving, as it

---

[1] 86 A.3d 1102 (Del. 2014).
[2] — A.3d —, 2015 WL 7776659 (Del. Super. Nov. 30, 2015).

does, underlying tort and contract issues solely related to India—seems, in line with the decisions above, ripe for dismissal on *forum non conveniens* grounds. Upon close examination, however, the alleged acts of the Defendant—holding, marketing and monetizing the purloined asset—as well as the weighing of other factors appropriate to consideration of this motion, lead me to find that the choice of forum here must be respected. For the reasons that follow, the Defendant's motion is denied.

## I. BACKGROUND[3]

### A. The Parties

Plaintiff Pipal Tech is a closely-held corporation formed in 2011 under the laws of India with its principal place of business in India.[4] Pipal Tech is in the business of developing, licensing, and supporting mobile and web-based applications.[5]

Non-parties Amit Baid, Raviteja Dodda, and Yashwanth Kumar are the founders of Pipal Tech.[6] Dodda and Kumar are also former executives and board

---

[3] The facts, except where otherwise noted, are drawn solely from the allegations of the Complaint and the documents incorporated by reference therein, and are presumed true for purposes of evaluating the Defendant's Motion to Dismiss.

[4] Compl. ¶ 1.

[5] *Id.*

[6] *Id.* at ¶ 5. These individuals are referred to as Baid, Dodda, and Kumar, respectively, throughout the remainder of this Opinion, not to be confused with other non-parties sharing the same surnames.

members of Pipal Tech, and the founders of Defendant MoE.[7] MoE is a Delaware corporation, incorporated on or about July 22, 2014.[8] According to the Defendant, it is operated by non-party MoEngage India Private Limited ("MoE India").[9]

*B. Facts*

Pipal Tech was formed in 2011 with seed capital provided by CP Baid and Premlata Baid, who also serve on the Plaintiff's board of directors.[10] Dodda and Kumar were appointed as Directors to Pipal Tech's board of directors with a minority stake in September 2011.[11] Shortly thereafter, both were hired as employees, with Dodda tasked to head Pipal Tech's product and business development and day-to-day operational management, and Kumar to manage the Plaintiff's technology and engineering functions.[12] Subsequently, in mid-2013, Dodda was appointed the Chief Executive Officer (CEO) and Kumar the Chief Technical Officer (CTO) of Pipal Tech.[13] The terms of their employment were set forth in respective employment agreements (the "Employment Agreements"),

---

[7] *Id.* at ¶¶ 7, 38.
[8] *Id.* at ¶ 38.
[9] According to the Defendant, MoE has no employees and is operated through its subsidiary MoE India, a corporation organized and existing under the laws of India, with its principal place of business in Bangalore in the State of Karnataka, India. Def's Opening Br, Ex. A (Affidavit of Raviteja Dodda) ¶ 4. The Complaint is silent as to the relationship between MoE and MoE India.
[10] Compl. ¶ 6.
[11] *Id.* at ¶ 7.
[12] *Id.*
[13] *Id.*

4

executed in November 2011,[14] each providing that Pipal Tech "shall retain ownership of all right, title and interest in the Company Materials including all copyright, trademark, patent, or other intellectual property rights" and that "[n]othing in this Agreement shall be construed to assign or license any rights in any company to [Dodda or Kumar] except as set forth in this Agreement."[15] The Employment Agreements further provide that Dodda and Kumar "assign[] to the Company all right, title and interest in the Product, designs and specifications (related and unrelated to the product) including all copyright, trademark, patent and other intellectual property rights."[16]

In addition to the Employment Agreements, Dodda and Kumar executed non-disclosure agreements (the "NDAs") providing that all "Confidential Information" is the property of Pipal Tech, with "Confidential Information" defined to include, among other things, "all information or material that is related to the business of [Pipal Tech] which [] may derive economic value, actual or potential, from not being generally known to or readily ascertainable by the other person who can obtain economic value from its disclosure or use."[17] Under the terms of the NDAs, Dodda and Kumar are not permitted to "disclose, give away, divulge, exchange or make

---

[14] *Id.* at ¶ 8.
[15] *Id.*
[16] *Id.* at ¶ 9.
[17] *Id.* at ¶ 10.

known or available in any way" Pipal Tech's Confidential Information without the prior written consent of Pipal Tech.[18] Both the NDAs and the Employment Agreements expressly provide that they are governed by Indian law, and the NDAs include a forum selection clause designating Karnataka, India as the proper venue for any disputes arising with respect to the NDAs.[19]

Shortly after Dodda and Kumar were hired, Pipal Tech began developing an application called DelightCircle—subsequently re-launched with enhancements as "SaveZippy"—a location-based mobile and web application that allows retailers to "engage with their customers and distribute and market retail coupons."[20] Dodda and Kumar were involved in the technical development of SaveZippy, interacted with Pipal Tech's customers and investors regarding the product, and handled media relations.[21] By March 2013, Pipal Tech had expanded to the United States and Canada with SafeZippy and other Pipal Tech products by incorporating

---

[18] *Id.* at ¶ 11.

[19] *See* Pl's Opening Br., Ex. B (Dodda Employment Agreement) ¶ 8 ("This Agreement shall be construed with, and governed in all respects by, the laws of India, without regard to conflicts of laws principles."); Pl's Opening Br., Ex. C (Dodda Non-Disclosure Agreement) ¶ 16 ("This Agreement shall be construed to and governed by the Honorable Courts of Banglore/Benglaru in the State of Karnataka, India, without regard to the conflicts of laws or provisions thereof. All legal proceedings, including the rendering of any award, shall take place in Karnataka, India, which shall be the exclusive forum for resolving any dispute, controversy or claim arising out of or related in any manner to this Agreement."). These agreements are incorporated by reference and integral to the Complaint; therefore, the Court may consider their contents. *See Trenwick America Litig. Trust v. Ernst & Young, L.L.P.*, 906 A.2d 168, 188 (Del. Ch. 2006) ("In evaluating the complaint, the court may also consider the unambiguous terms of those documents incorporated by reference in the complaint . . . .").

[20] Compl. ¶ 15.

[21] *Id.* at ¶ 16.

6

DelightCircle, Inc., a Delaware corporation, and beginning to seek U.S.-based investors.[22]

In order to address a key challenge in the mobile-application business—keeping users engaged—Pipal Tech developed a set of technologies (collectively referred to as the "MoEngage Product") to be used in SaveZippy and another Pipal Tech application under development (the "Mantri Application").[23] The MoEngage Product tracks users' usage of the application, categorizes users based on certain criteria, and delivers information to users based on their interests through push-based notifications, changing the application's content, or via other channels such as email.[24]

Recognizing the potential independent value of the MoEngage Product, Dodda proposed in a phone call to Baid, also a member of Pipal Tech's Board, that Pipal Tech market the MoEngage Product as a separate application.[25] With Baid's verbal agreement and Pipal Tech's authorization, Dodda and Kumar copied and removed the MoEngage Product-related source code from Pipal Tech's server that housed SaveZippy's and the Mantri Application's source codes, and moved it to a different server controlled by Dodda and Kumar.[26] They then reformatted the source

---

[22] *Id.* at ¶ 17.
[23] *Id.* at ¶ 18.
[24] *Id.*
[25] *Id.* at ¶ 19.
[26] *Id.* at ¶¶ 19–21. As high-ranking employees, Dodda and Kumar had exclusive control over access to the servers on which Pipal Tech kept its source codes. *Id.* at ¶ 14.

code to make it independently transferable to third parties and marketable as a new product for the Plaintiff.[27]  Between April 15 and April 30, 2014, Dodda, through a series of emails between himself and Baid, confirmed that the MoEngage Product was developed using software created by Pipal Tech.[28]

On or about April 20, 2014, Dodda developed a web-based demo of the MoEngage Product and started reaching out to prospective clients.  From April to June 2014, Dodda and Kumar provided demonstrations, presentations, and other information regarding the MoEngage Product to numerous third parties.[29] Specifically, Dodda marketed the MoEngage Product to "the largest movie ticket purchasing mobile application in India—Book My Show," "one of India's largest e-commerce portals, Jabong," an 800-participant conference of start-up companies in India, and at least 14 other companies based out of India, all on behalf of the Plaintiff.[30]  In mid-May 2014, Dodda and Kumar also applied to a U.S.-based investment firm called 500 Start-Up Accelerator, acknowledging in the application that the MoEngage Product was initially built by the Plaintiff to increase the user engagement of SaveZippy, and that Rohit Bhat and Naveen Kumar, both current employees of Pipal Tech, were part of the team working on the MoEngage Product.[31]

---

[27] *Id.* at ¶ 20.
[28] *Id.* at ¶ 22.
[29] *Id.* at ¶¶ 23–30.
[30] *Id.*
[31] *Id.* at ¶ 27.

By early June 2014, it was clear that there was significant demand for the MoEngage Product and that it was potentially a very valuable asset; and by mid-June, Dodda confirmed to Baid, through his Pipal Tech email account, that three new clients had agreed to license the MoEngage Product and that the Plaintiff's employees had begun technical integration.[32]

"Shortly thereafter," Dodda and Kumar allegedly asserted to Pipal Tech—for the first time—that the MoEngage Product was their own because they had developed it, and that the MoEngage Product would be the property of a new, separate entity owned and controlled by them.[33] The Plaintiff also alleges that, at some time in June 2014, the Defendant "wrongfully interfered with Plaintiff's employment relationship with Rohit Bhat and Naveen Kumar" by soliciting them to terminate their employment with the Plaintiff for a position with the Defendant (which, according to the Complaint, was not yet incorporated in Delaware).[34] Dodda and Kumar then resigned as CEO and CTO, respectively, on June 16, 2014, remaining on Pipal Tech's Board.[35]

The Plaintiff further alleges that "[s]omtime in late June 2014," without the Plaintiff's permission, Dodda and Kumar removed the MoEngage Product source

---

[32] *Id.* at ¶¶ 31–32.
[33] *Id.* at ¶ 33.
[34] *Id.* at ¶¶ 27, 38.
[35] *Id.* at ¶ 34.

code and all other data and information pertaining to the MoEngage Product from the Plaintiff's servers—including pricing models, business strategy, proposed contracts, and customer lists—and "then transferred this information to Defendant, a company they formed and incorporated in the State of Delaware on or about July 22, 2014."[36] Following the alleged misappropriation, Pipal Tech sent Dodda and Kumar a cease and desist letter, and in response, Dodda and Kumar resigned from Pipal Tech's Board on July 28, 2014.[37]

Despite multiple requests by the Plaintiff, MoE has refused to produce the contracts of the clients whose interest Dodda and Kumar confirmed with the Company in mid-June.[38] The Plaintiff believes that the Defendant has taken these contractual relations for itself.[39] Since its incorporation, MoE has also received an investment of $50,000 from Alchemist Accelerator ("Alchemist"), a U.S.-based investment firm that invests in early-stage technology companies.[40] Kumar and Dodda are attempting to raise an additional $750,000 in capital from other U.S.-based venture capital firms, all while representing that the MoEngage Product belongs to the Defendant and that many large companies in India are using the MoEngage Product.[41]

---

[36] *Id.* at ¶ 38.
[37] *Id.* at ¶¶ 36–37.
[38] *Id.* at ¶ 39.
[39] *Id.*
[40] *Id.* at ¶ 41.
[41] *Id.* at ¶ 42.

10

The parties have engaged in months-long negotiations in an effort to resolve this dispute amicably.[42] The Plaintiff contends that, during the course of these negotiations, however, it learned that the Defendant destroyed key information related to its theft of the MoEngage Product, and that the Defendant acknowledged the deletion in an email dated October 24, 2014.[43]

*C. Procedural History*

On November 20, 2014, Pipal Tech filed its Verified Complaint against MoE, alleging the misappropriation and conversion of mobile application engagement and marketing software. In Count I, the Plaintiff seeks a declaratory judgment recognizing that the intellectual property at dispute, the MoEngage Product, rightfully and exclusively belongs to Pipal Tech. The Plaintiff asserts in Count II a trade secrets violation pursuant to 6 *Del. C.* § 2001, claiming that the "Plaintiff's source code related to [MoE] has independent economic value and qualifies as a trade secret," and that the "Defendant acquired Plaintiff's source code through the unlawful actions of Dodda and Kumar."[44] In relief, the Plaintiff seeks damages, attorneys' fees, pre- and post-judgment interest on any amount due to the Plaintiff, and "a permanent injunction prohibiting [the] Defendant from exercising control

---

[42] *Id.* at ¶ 45.
[43] *Id.*
[44] *Id.* at ¶¶ 55–56.

over [the] Plaintiff's source code or transferring it to any third party."[45]   Finally, Count III—which has since been voluntarily dismissed by the Plaintiff—sought damages for the Defendant's alleged conversion of the Plaintiff's source code.[46]

On December 16, 2014, the Defendant filed a Motion to Dismiss on the grounds of *forum non conveniens*.  The Plaintiff served the Defendant with its first set of discovery requests on December 31, 2014, and on January 31, 2015, the Defendant filed a Motion to Stay Discovery pending the resolution of the Motion to Dismiss.  Full briefing of the motions followed.

I heard oral argument on the motions on April 23, 2015 (the "Oral Argument"), at which time I directed the parties to proceed with document discovery[47] and reserved judgment on the Motion to Dismiss.  Following the Oral Argument, I requested supplemental briefing on the following issues: (1) ". . . to what extent is process available for taking discovery under the Hague Convention of Indian nationals who may have pertinent evidence"; and (2) "whether there are unsettled issues of Indian law generally regarding" (a) employment contracts and restrictive covenants, and (b) "intellectual property rights in general."[48]   After reviewing the supplemental briefing, for the following reasons, I deny the

---

[45] *Id.* at ¶¶ 58–59, 19.
[46] *Id.* at ¶¶ 61, 65; Oral Argument Tr. 40:15–20.
[47] Oral Argument Tr. 66:23–24.
[48] *Id.* at 65:8–10, 15–16, 19.

Defendant's Motion to Dismiss on *forum non conveniens* grounds.

## II. ANALYSIS

Delaware's jurisprudence in *forum non conveniens* cases is well established,[49] and has recently been clarified by our Supreme Court.[50] A court—in the absence of a prior-filed action elsewhere—should respect a plaintiff's choice of forum except in the "rare case"[51] where the defendant demonstrates "with particularity that it will be subjected to overwhelming hardship and inconvenience if required to litigate in Delaware,"[52] thereby warranting "drastic relief."[53] While a "bare claim of inconvenience" is insufficient to make the required showing,[54] the "overwhelming hardship" standard is not preclusive.[55] The moving defendant need not show that it is factually or financially impossible to mount a defense in this jurisdiction. Rather, to overcome a plaintiff's jurisdictional choice, a moving defendant must demonstrate that such a choice is overwhelmingly inappropriate and inconsistent with the administration of justice.[56] In addressing this issue, the Court's analysis of hardship

---

[49] *Taylor v. LSI Logic Corp.*, 689 A.2d 1196, 1198–99 (Del. 1997).

[50] *E.g.*, *Martinez v. E.I. DuPont de Nemours and Co.*, 86 A.3d 1102 (Del. 2014); *Hupan v. Alliance One Int'l, Inc.*, 2015 WL 7776659 (Del. Super. Nov. 30, 2015).

[51] *Chrysler First Bus. Credit Corp. v. 1500 Locust Ltd. P'ship*, 669 A.2d 104, 105 (Del. 1995).

[52] *LSI Logic Corp.*, 689 A.2d at 1199.

[53] *Jacobson v. Ronsdorf*, 2005 WL 29881, at *4 (Del. Ch. 2005) (citing *Candlewood Timber Grp., LLC v. Pan Am. Energy, LLC,* 859 A.2d 989, 994 (Del.2004)).

[54] *RJ Associates, Inc. v. Health Payors' Org. Ltd. P'ship, HPA, Inc.*, 1999 WL 550350, at *6 n.21 (Del. Ch. 1999) (citing *LSI Logic Corp.*, 689 A.2d at 1199).

[55] *Martinez*, 86 A.3d at 1105.

[56] *Id.* at 1112.

and inconvenience is guided by the factors set out by our Supreme Court in *General Foods Corp. v. Cryo-Maid, Inc.*,[57] including:

> (1) the relative ease of access to proof;
> (2) the availability of compulsory process for witnesses;
> (3) the possibility of the view of the premises;
> (4) whether the controversy is dependent upon the application of Delaware law which the courts of this State more properly should decide than those of another jurisdiction;
> (5) the pendency or nonpendency of a similar action or actions in another jurisdiction; and
> (6) all other practical problems that would make the trial of the case easy, expeditious and inexpensive.[58]

Application of these factors is not mechanical or mathematical; that all the factors may favor the defendant is not enough. The Court must consider each of the factors in light of the particular case and determine whether any or all "truly cause both inconvenience and hardship."[59] While courts have traditionally applied the doctrine sparingly, with due regard for the plaintiff's right to choose its forum,[60] the Delaware Supreme Court recently clarified in *Martinez* that, despite its "preclusive-sounding appellation, the 'overwhelming hardship' standard is not insurmountable," and is "more properly perceived as requiring a finding that, on balance, litigation in Delaware would represent a manifest hardship to the defendants, 'a stringent

---

[57] 198 A.2d 681 (Del. 1964).

[58] *LSI Logic Corp.*, 689 A.2d at 1198–99.

[59] *Chrysler First Bus. Credit Corp.*, 669 A.2d at 105; *see also Health Payors' Org. Ltd. P'ship*, 1999 WL 550350, at *6 n.21 ("A bare claim of inconvenience is an insufficient basis for dismissal absent a particularized showing of hardship.") (citing *LSI Logic Corp.*, 689 A.2d at 1199).

[60] *Wilmington Sav. Fund Soc'y, FSB v. Caesars Entm't Corp.*, 2015 WL 1306754, at *7 (Del. Ch. Mar. 18, 2015).

standard that holds defendants who seek to deprive a plaintiff of her chosen forum to an appropriately high burden.'"[61]  With that framework in mind, I consider the factors set out in *Cryo-Maid*, as follows.

### A.  *Relative Ease of Access to Proof*

The first factor that I must consider is the relative ease of access to proof.  This "proof" includes the relevant documents and witnesses.[62]  The Defendant must make a "particularized showing that witnesses, documents, or other evidence necessary to defend the allegations contained in [the Plaintiff's] complaint cannot be brought to or otherwise produced in Delaware."[63]  In considering this factor, I must bear in mind that "[m]odern methods of information transfer render concerns about transmission of documents virtually irrelevant."[64]

The Defendant contends that nearly all of the potential witnesses and sources of information pertinent here are located in India.[65]  The Defendant points out that, to determine ownership of the MoEngage Product, the Court must consider the facts surrounding the contractual relationship between the Plaintiff and Dodda and Kumar

---

[61] *Id.* at *8 (quoting *Martinez*, 86 A.3d at 1105).

[62] *Dimeling, Schreiber and Park v. Packaging Indus. Grp., Inc.*, 1991 WL 260762, at *4 (Del. Ch. Nov. 15, 1991).

[63] *Candlewood Timber Grp.*, 859 A.2d at 1001 (quoting *Mar-Land Indus. Contractors, Inc. v. Caribbean Petroleum Refining, L.P.*, 777 A.2d 774, 781 (Del. 2001)).

[64] *Asten v. Wanger*, 1997 WL 634330, at *3 (Del. Ch. Oct. 3, 1997).  The parties apparently concede as much, as the vast majority of the briefing on this factor focuses on the availability of witnesses.

[65] Def's Opening Br. 7.

as well as the removal of the MoEngage Product from the Plaintiff, all of which facts arose in India. The Defendant argues that it may need to call upon for testimony Pipal Tech and its employees, MoE India and its employees, Dodda, Kumar, Rohit Baht, Naveen Kumar, "hundreds of third parties to whom Dodda and Kumar pitched" the MoEngage Product, and the "many large companies" purportedly using the MoEngage Product, nearly all of whom are located in India.[66] However, in discovery relating to this Motion, the Defendant has identified only twelve witnesses necessary to its defense.[67]

Conversely, the Plaintiff contends that there is little material evidence located in India, and that whatever material evidence is located in India is accessible as pretrial discovery.[68] Moreover, the Plaintiff argues that the third parties identified by the Defendant "are, at best, [peripheral] to the core allegations underlying Defendant's misappropriation of Plaintiff's intellectual property."[69] The Plaintiff suggests that any information related to the customers identified in the Complaint is accessible electronically, and that the Defendant has failed to show with particularity that any of its nonparty employees possess relevant information unique from that known to and controlled by Dodda and Kumar.[70]

---

[66] *Id.*
[67] *See infra* notes 82–83 and accompanying text.
[68] Pl's Answering Br. 14.
[69] *Id*.
[70] *Id.*

I find this factor supports the Defendants. It is true that modern technology has lessened the degree of efficiency gained by proximity, but to the extent documentary and deposition evidence must be gathered, that process will largely take place in India, and certainly not in Delaware.

*B. Availability of Compulsory Process for Witnesses*

The second factor I must consider is the availability of compulsory process for witnesses. For this factor to favor the Defendant, it must have identified the witnesses and "the specific substance of their testimony,"[71] and have explained why the witnesses' testimony could not be presented in Delaware by deposition.[72] "Further, for this factor to be relevant, the other forum should 'provide a substantial improvement as to the number of witnesses who would be subject to compulsory process.'"[73]

At the Oral Argument, I expressed concern as to "whether the defendant can mount a full defense, given the strictures of the Hague Convention"[74] and asked the parties to provide supplemental briefing addressing "to what extent is process available for taking discovery under the Hague Convention of Indian nationals who

---

[71] *Rapoport v. Litig. Trust of MDIP, Inc.*, 2005 WL 3277911, at *6 (Del. Ch. Nov. 23, 2005) (citing Donald J. Wolfe, Jr. & Michael A. Pittenger, Corporate and Commercial Practice in the Delaware Court of Chancery § 5-2[c] (2005)).

[72] *In re Chambers Dev. Co., Inc. S'holders Litig.*, 1993 WL 179335, at *6 (Del. Ch. May 20, 1993) (citing *States Marine Lines v. Domingo*, 269 A.2d 223 (Del. 1970)).

[73] *Rapoport*, 2005 WL 3277911, at *6 (citation omitted).

[74] Oral Argument Tr. 27:10–13.

may have pertinent evidence."[75]  Upon further research, the parties agree that compulsory process is available in India under both the Hague Convention and Section 78 of the Indian Code of Civil Procedure.[76]

While the Defendant now concedes that compulsory process is available in India, it maintains that proceeding in Delaware will "impose an undue burden on [the] Defendant and cause it overwhelming hardship."[77]  The Defendant repeats its contention that the vast majority of evidence necessary to defend its claims is located in India, and that the complained-of conduct took place in India.  Additionally, the Defendant argues that, even assuming the witnesses—the vast majority of whom live in India—could be subpoenaed to testify, the costs associated therewith would be unduly burdensome for a start-up company like itself.[78]  The Defendant concedes that trial depositions could be substituted for live testimony in a trial in Delaware, but suggests that such a substitution deprives the Court, as fact finder, the opportunity "to effectively and contemporaneously evaluate the credibility of witnesses"[79]—thereby depriving the Defendant the full opportunity to attack that

---

[75] *Id.* at 65:8–10.

[76] Pl's Supp. Opening Br. 14, Ex. C (the "Sethna Report"), at ¶¶ 3.1–3.2.  While the Defendant has conceded that compulsory process is available in India, it notes that "it does not agree with all the statements in Ms. Sethna's report."  Def's Supp. Answering Br. 4 n.2.  No further clarification of the Defendant's objection is offered, however, and the Defendant relies upon the Sethna Report in its argument.  *See* Def's Supp. Answering Br. 6 n.4.

[77] *Id.* at 4.

[78] *Id.* at 5–6.

[79] *Id.* at 6.

credibility.[80]

The Plaintiff argues that the Defendant's discovery responses confirm there are no third-party witness in India who have material information *and* are outside of the Defendant's control.[81]  That is, the Defendant identified only twelve individuals in response to an interrogatory asking it to identify any "person it may call as a witness at a hearing or trial in this case, by deposition, affidavit or any other means."[82]  Of those twelve, according to the Plaintiff, four are employees of "the Defendant."[83]  The record appears to indicate that the Defendant has no employees, and the Plaintiff presumably means that these four are employees of the Defendant's subsidiary, MoE India, an Indian corporation.[84]  The Plaintiff concedes that the remaining eight witnesses that the Defendant has identified are customers of the parties, but it argues that, because none of the Defendant's customers "were or are authorized to know the contractual rights and obligations between Dodda, Kumar and Plaintiff," that these witnesses cannot reasonably be expected to have any non-

---

[80] *See Aveta, Inc. v. Colon*, 942 A.2d 603, 612–13 (Del. Ch. Jan. 15, 2008) ("[D]epositions serve as poor proxies for live testimony because the fact finder loses the opportunity effectively and contemporaneously evaluate the credibility of the witness. . . . A court of equity may not willfully ignore substantial issues of fairness, and considering the relative size and resources of the defendant in this case, I conclude that [the Defendant] would face an overwhelming hardship if forced to absorb the considerable expense of flying his numerous witnesses from Puerto Rico to Delaware and boarding them here.").
[81] Pl's Supp. Opening Br. 11.
[82] *Id.*
[83] *Id.*
[84] *See supra* note 9.

cumulative information material to determining which party is the rightful owner of the MoEngage Product.[85]  In other words, the Plaintiff argues that only a handful of witnesses have relevant evidence subject to testimony here.

I find that process is available to compel testimony of the necessary witnesses here, although practical reasons indicate that live testimony would be curtailed and that obtaining and presenting testimony would be cumbersome and inefficient.  I do not find this factor supportive of the Defendant's motion, although the lack of practical access to live testimony is a factor I consider in my analysis of the final *Cryo-Maid* factor, below.

### C.  Possibility of the View of the Premises

The Plaintiff and Defendant agree that this factor is inapplicable here.[86]

### D.  Whether the Controversy is Dependent upon the Application of Delaware Law Which the Courts of this State More Properly Should Decide Than Those of Another Jurisdiction

Generally, the application of foreign law is "not sufficient reason to warrant dismissal under the doctrine of *forum non conveniens*."[87]  However, the Supreme

---

[85] Pl's Supp. Opening Br. 11–12.

[86] *See* Def's Opening Br. 7 (conceding that this factor "is not applicable here because the case involves mobile and web-based application technologies that can be viewed an made available electronically."); Pl's Answering Br. 3 ("The third *Cyro-Maid* factor—the possibility of the view of the premises—is not implicated in the instant case and thus warrants no further attention here.").

[87] *LSI Logic Corp.*, 689 A.2d at 1200 (emphasis added); *see also Candlewood Timber Group*, 859 A.2d at 1002 (finding no overwhelming hardship where the application of Argentine law required "translating pertinent legal precedent, [] retaining foreign lawyers, and [] producing foreign law experts to testify at trial").

Court recently clarified in *Martinez* that, where important and novel issues of another sovereign are presented, those issues "are best determined by their courts where practicable."[88]

Here, both parties agree that the application of Indian law, at least as to one of the claims, is appropriate.[89]  To assess the Plaintiff's claims, I will need to determine whether the MoEngage Product ever belonged to the Plaintiff under applicable Indian law and, if so, whether the MoEngage Product is improperly held by the Defendant.  In part, that analysis will turn on evaluation of the Employment Agreements and NDAs signed by non-parties Dodda and Kumar.  Those agreements are governed by Indian law.  In their supplemental briefing, the parties agree that Indian law, as relevant to the issues here, is settled.[90]  The Complaint also seeks

---

[88] *Martinez*, 86 A.3d at 1110.  The Supreme Court explained further:

> To state it differently, just as our cases have recognized the plaintiff's substantial interest in having important open questions of Delaware law decided by our courts, a principled application of that reasoning must give reciprocal weight to a defendant's interest in having important issues of foreign law decided by the courts whose law governs the case. *Id.*

[89] The Plaintiff contends that Count II of the Complaint—the trade secrets claim under Delaware's version of the Uniform Trade Secrets Act ("DUTSA")—should be informed by DUTSA and the Delaware law interpreting and applying DUTSA.  Pl's Supp. Opening Br. 20.  The Plaintiff also argues that it remains an open question as to whether the wrongful acquisition claim in Count II should be decided under Delaware law.  *Id.*  The Plaintiff urges the Court, should it find a conflict of law, to apply the "most significant relationship test" of the Restatement (Second) of Conflicts to determine which jurisdiction's law governs the trade secret claim.  *Id.* at 20–21.

[90] *See* Pl's Supp. Opening Br. 18–19 ("The Indian laws governing an employer's ability to enforce restrictive covenants and contractual intellectual property rights, like the kind at issue here, are well-settled, uncomplicated, written in English and trace their roots to English common law."); Def's Supp. Answering Br. 7 ("There do not appear to be any unsettled issues of Indian law that would be applicable to this proceeding . . . .").

redress for breach of the Delaware Uniform Trade Secrets Act, which will require application of Delaware law. Nothing in the record suggests that the issues posed will invoke novel interpretation of Delaware law.

This factor slightly favors the Defendant's motion. The tort that underlies this action—the conversion of the MoEngage Product—took place, if at all, in India. If the Defendant's principals—non-parties here—breached contractual obligations relating to that conversion, those breaches took place in India. Indian law applies, and Indian issues are implicated, in those issues. I note, however, that this factor would be more persuasive if unsettled issues of Indian law were presented; this Court is capable of applying settled Indian law, as the Courts of India are the law of Delaware. I also take judicial notice that English is an official language of India, and that therefore nettlesome issues of translation are not present.

### E. Pendency of a Similar Action in Another Jurisdiction

Next, I must consider whether there is a similar action pending in another jurisdiction. There is none here. The Plaintiff asserts that this lack of concurrent litigation weighs heavily in its favor, as this Court has noted that "[t]he absence of another pending litigation weighs significantly against granting a *forum non conveniens* motion."[91] I note, however, that the Defendant has agreed to submit

---

[91] *Vichi v. Koninklijke Philips Elecs. N.V.*, 2009 WL 4345724, at *13 (Del. Ch. Dec. 1, 2009) (quoting *Berger v. Intelident Solutions, Inc.*, 906 A.2d 134, 137 (Del. 2006)); *see also Taylor*, 689 A.2d 1197, 1198 (Del. 1997) (providing that "judicial discretion is to be exercised sparingly where,

22

itself to Indian jurisdiction if its motion is granted.[92] In addition, given the very early stage of the proceeding, any inefficiency involved in a transfer of this action to an Indian court would be minimal.[93] Accordingly, this factor weighs only slightly in favor of the Plaintiff.

### F. All Other Practical Problems That Would Make the Trial of the Case Easy, Expeditious and Inexpensive

"Under this prong, Delaware courts have examined a wide array of considerations[,] including judicial economy, the motives of the parties filing suit in the respective jurisdictions, and public interest."[94]

This case fits rather poorly the enumerated *Cryo-Maid* factors above, largely because the action as brought does not name as party defendants the principals of the corporate defendant, Dodda and Kumar, the individuals whose alleged theft of assets or breaches of contract underlie this action. The actionable behavior alleged against the Defendant—wrongfully holding and marketing the MoEngage Product—is, in the Defendant's view, secondary to the alleged Indian contract

---

as here, there is no prior action pending elsewhere" (citing *McWane Cast Iron Pipe Corp. v. McDowell-Wellmen Eng'g Co.*, 263 A.2d 281, 283 n.2 (Del. 1970))).

[92] Def's Reply Br. 12.

[93] *See IM2 Merch. and Mfg., Inc. v. Tirex Corp.*, 2000 WL 1664168, at *11 n.54 (Del. Ch. Nov. 2, 2000) (citing *Ison v. E.I. DuPont de Nemours and Co.*, 729 A.2d 832, 845 (Del. 1999) (directing court to consider the stage of litigation in assessing this factor)); *Nash v. McDonald's Corp.*, 1997 WL 528036, at *3 (Del. Super. Feb. 27, 1997) (finding the fact that no action was pending elsewhere was no bar to a *forum non conveniens* dismissal where there was no obstacle that prevented the plaintiffs from pressing the action in the appropriate forum).

[94] *Azurix Corp. v. Synagro Tech., Inc.*, 2000 WL 193117, at *6 (Del. Ch. Feb 3, 2000).

23

breaches and theft. While the Plaintiff asserts correctly that Delaware has a "powerful interest" in preventing Delaware entities from being used as a vehicles for wrongdoing,[95] it is India that has an interest in preventing theft of assets in India, and in redressing breaches of contract occurring there.

The Plaintiff also argues that this Court is better positioned than any Indian court to address the alleged destruction of evidence by Dodda and to prevent further evidence tampering, and generally to administer swift and complete justice, without demonstrating convincingly why that is the case.[96] Moreover, while the Plaintiff concedes that it cannot sue the individual wrongdoers here, if this litigation goes forward Dodda and Kumar will surely have to appear and defend their actions, and this Court will have to consider their contractual obligations under Indian law. With respect to the NDAs, the Plaintiff agreed contractually that Karnataka, India provided the sole venue for such a dispute; instead, the litigation will take place in a venue 8,000 miles from that location. Also supportive of the Defendant's Motion is the concern that cost will dictate that some live testimony will be replaced by trial depositions.

However, according to the Complaint, after converting the MoEngage

---

[95] *See Williams v. Calypso Wireless, Inc.*, 2012 WL 424880, at *7 (Del. Ch. Feb. 8, 2012) ("Delaware has a powerful interest of its own in preventing the entities that it charters from being used as vehicles for fraud. Delaware's legitimacy as a chartering jurisdiction depends on it.") (quoting *NACCO Indus., Inc. v. Applica Inc.*, 997 A.2d 1, 26 (Del. Ch. 2009)).
[96] *See* Pl's Answering Br. 24.

24

Product, Kumar and Dodda created a Delaware entity to hold, market, and monetize the purloined asset. The Defendant, a Delaware corporation, is allegedly holding the asset not only in contravention of Indian law, but also in violation of the Delaware Uniform Trade Secrets Act. I recognize that the deference to a plaintiff's choice of forum is properly of less importance where an alternative forum is the plaintiff's home jurisdiction,[97] but the same can be said for a defendant's opposition to litigation in its home-state courts. While the Defendant now represents it would not oppose jurisdiction in the State of Karnataka, India, it is clear that the Plaintiff followed its asset to this forum, where the Defendant now holds it. My job in evaluating this motion is not to choose the "best," or even a "proper" forum; instead, it is to respect the Plaintiff's choice of forum unless the Defendant can show resulting hardship or inconvenience so profound that it overwhelms that choice. While Delaware is not a convenient place for the Defendant to litigate, it has not shown that this venue is overwhelmingly inconvenient.

## III. CONCLUSION

In consideration of all the factors set out above, I conclude that the Defendant has failed to demonstrate that fundamental concerns of the administration of justice

---

[97] *IM2 Merch. And Mfg., Inc.*, 2000 WL 1664168, at *9 ("Although the Supreme Court has emphasized that the plaintiffs' domicile is not a factor that in isolation comes close to helping a defendant bear its burden to show overwhelming hardship to itself, common sense indicates that a court should be somewhat less hesitant to dismiss for forum *non conveniens* when the defendants contend that the proper forum is in the backyard of the plaintiffs.").

overwhelmingly support dismissal of this action, in deference to a theoretical action in an Indian court.  For the foregoing reasons, I deny the Defendant's Motion to Dismiss on the grounds of *forum non conveniens*.  An appropriate order accompanies this Memorandum Opinion.

**IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE**

| | | |
|---|---|---|
| PIPAL TECH VENTURES PRIVATE LIMITED, | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 10381-VCG |
| | ) | |
| MOENGAGE, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## **ORDER**

AND NOW, this 17th day of December, 2015,

The Court having considered the Defendant's Motion to Dismiss, and for the reasons set forth in the Memorandum Opinion dated December 17, 2015, IT IS HEREBY ORDERED that the Motion to Dismiss is DENIED.

SO ORDERED:


/s/ Sam Glasscock III

Vice Chancellor