# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| NAPLES CENTER FOR DERMATOLOGY & COSMETIC SURGERY, PA d/b/a RIVERCHASE DERMATOLOGY, | ) ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | C.A. No. 2023-1231-BWD |
| ANA TRISAN, | ) ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION GRANTING MOTION TO DISMISS

Date Submitted: April 15, 2025
Date Decided: May 2, 2025

Gary W. Lipkin, Patrick A. Lockwood, SAUL EWING LLP, Wilmington, DE; OF COUNSEL: John M. Riccione, Brianna M. Skelly, TAFT STETTINIUS & HOLLISTER LLP, Chicago, IL; *Attorneys for Plaintiff Naples Center for Dermatology & Cosmetic Surgery, PA*.

John M. LaRosa, LaROSA & ASSOCIATES LLC, Wilmington, DE; OF COUNSEL: Keith Hanenian, David Perrott, LAW OFFICE OF KEITH HANENIAN, PA, Tampa, FL; *Attorneys for Defendant Ana Trisan*.

**DAVID, V.C.**

The plaintiff in this action is a Florida corporation that provides dermatology services to patients in Florida. The defendant, a resident of Florida, was formerly employed by the plaintiff as a physician assistant. The plaintiff alleges that the defendant has breached restrictive covenants in her employment agreement—a contract in which the parties agreed to submit to the exclusive jurisdiction and venue of the Delaware courts.

Before the plaintiff filed suit here, it sued the defendant for breach of the restrictive covenants in Florida state court and litigated those claims for seven months. This memorandum opinion concludes that the plaintiff waived the exclusive jurisdiction provision in the employment agreement. Applying the doctrine of *forum non conveniens*, the defendant's motion to dismiss is granted.

## I. BACKGROUND

The following facts are drawn primarily from Plaintiff's Verified Complaint (the "Complaint") and the documents incorporated by reference therein. Verified Compl. [hereinafter Compl.], Dkt. 1.[1]

---

[1] *But see McDonald's Corp. v. Easterbrook*, 2021 WL 351967, at *3 (Del. Ch. Feb. 2, 2021) ("When addressing a motion under Rule 12(b)(3), 'the court is not shackled to the plaintiff's complaint and is permitted to consider extrinsic evidence from the outset.'" (quoting *In re Bay Hills Emerging P'rs I, L.P.*, 2018 WL 3217650, at *4 (Del. Ch. July 2, 2018))). The Court takes judicial notice of publicly filed documents in related litigation pending before the Circuit Court of the Eleventh Judicial Circuit, in and for Miami-Dade County, Florida. *Naples Ctr. for Dermatology & Cosm. Surgery, PA v. Trisan*, No. 2023-016622-CA-01 (Fla. Cir. Ct. filed May 11, 2023) [hereinafter Fl. Dkt.].

1

**A. Trisan, A Physician Assistant, Executes An Employment Agreement With Restrictive Covenants.**

Riverchase Dermatology ("Riverchase" or "Plaintiff") is a Florida corporation that provides surgical, general, and cosmetic dermatology services to patients throughout Florida. *Id.* ¶¶ 3, 6–7.

Before June 2017, Ana Trisan ("Trisan" or "Defendant") was employed as a physician assistant at Bowes Dermatology in Miami, Florida. *See id.* ¶¶ 4, 9. Riverchase acquired Bowes Dermatology, and on June 7, 2017, Trisan began working for Riverchase, still in Miami. *Id.* ¶¶ 9–10.

At that time, Trisan executed an employment agreement with Riverchase (the "Employment Agreement"). *Id.*, Ex. A. Paragraph 9 of the Employment Agreement contains confidentiality, noncompete, and non-solicitation provisions (the "Restrictive Covenants"). *Id.*, Ex. A ¶ 9. Paragraph 17 of the Employment Agreement, entitled "Governing Law; Exclusive Jurisdiction," states:

> This Agreement shall be governed by and construed in accordance with the laws of the State of Delaware, regardless of the laws that might otherwise govern under applicable principles of conflicts of laws. Each party submits to the exclusive jurisdiction and venue of the Delaware Chancery Court or, if such Court does not have jurisdiction, any other state or federal court sitting in the State of Delaware, and the courts to which an appeal from the Delaware Chancery Court or such other state or federal court sitting in the state of Delaware may be properly made in any action, application, reference or other proceeding arising out of or relating to this agreement, agrees that process may be served upon them in any manner authorized by the laws of the State of Delaware for such persons, and consents to all claims in respect of any such action, application, reference or other proceeding being heard and determined

in such courts. Each party agrees not to commence any legal proceedings related hereto except in such courts.

*Id.*, Ex. A ¶ 17. This memorandum opinion refers to Paragraph 17 of the Employment Agreement as the "Exclusive Jurisdiction Provision."

**B.      Trisan Leaves For A Competitor And Riverchase Sues, First In Florida, Then In Delaware.**

In October 2021, Trisan formed AME Aesthetics LLC, a Florida limited liability company. *Id.*, Ex. B. The entity's name was later changed to White Coat Beauty, LLC ("WCB"). *Id.*, Ex. C.

On January 1, 2023, Trisan resigned from her position at Riverchase. *Id.* ¶ 26. At some point thereafter, she began working for WCB as a physician assistant providing dermatology services. *Id.* ¶¶ 26, 28. Riverchase alleges that while working at WCB, Trisan has misused Riverchase's confidential information, including information derived from Riverchase's client list and electronic health records software system. *Id.* ¶ 31. Riverchase also alleges that Trisan has solicited Riverchase's patients and clients. *Id.*

On May 11, Riverchase filed a lawsuit (the "Florida Action") against Trisan and WCB in the Circuit Court of the Eleventh Judicial Circuit, in and for Miami-Dade County, Florida (the "Florida Court"), alleging breaches of the Employment Agreement, among other claims. Fl. Dkt. 2. The same day, Riverchase served discovery on Trisan and WCB. Fl. Dkts. 3–6.

3

On June 7, Trisan and WCB moved to dismiss the Florida Action, arguing that Riverchase's complaint failed to attach an unredacted copy of the Employment Agreement. Fl. Dkt. 14. In response, Riverchase amended its complaint, attaching an unredacted copy of the Employment Agreement. Fl. Dkt. 16. In its initial and amended complaints, Riverchase alleged that "[v]enue is proper in the Circuit Court in and for Miami-Dade County, because Defendant Trisan is a resident of Dade County, Florida. Defendant [WCB]'s principal place of business is located in Dade County, Florida and this is where the breach and illegal conduct occurred." Fl. Dkts. 2, 16.

On June 27, Trisan and WCB sent Riverchase a "safe harbor letter," asserting that they would move to dismiss the Florida Action and seek sanctions on the grounds that the Employment Agreement includes "an exclusive jurisdiction/forum provision requiring that any claims brought pursuant to the [Employment] Agreement must be brought in the State of Delaware, applying Delaware law" (the "June 27 Letter"). Pl.'s Answering Br. in Opp'n to Def.'s Mot. to Dismiss, or in the Alternative, Stay this Action [hereinafter PAB], Ex. 2 at 1, Dkt. 11. The June 27 Letter attached a draft motion to dismiss arguing that "the forum selection clause in the employment agreement is mandatory," and that "there is nothing in the record showing that the required Delaware venue is an alien forum that will be so gravely

4

difficult and inconvenient that Plaintiff will be deprived of its day in court." *Id.* at 13. Trisan and WCB never filed that motion.

On September 15, Trisan and WCB served written discovery on Riverchase in the Florida Action. Fl. Dkts. 18–20. Riverchase moved for an extension of time to respond to discovery on October 13. Fl. Dkt. 21.

On November 3, Riverchase's counsel sent an email to Trisan's counsel (the "November 3 Email") stating that:

> The Motion for Sanctions and the Motion to Dismiss essentially argue that pursuant to the forum selection provision in the employment agreement, the action should be brought in Delaware.
>
> We have discussed the possibility of settlement. In order to explore settlement, I would need some informal discovery . . . . However, before proceeding further my client wants to know if [Trisan and WCB] will agree to litigate in Florida.

PAB, Ex. 6. Trisan's counsel responded that Trisan "will agree [to] waive the Motion for Sanctions as well as the Delaware jurisdictional requirements of the employment contract." *Id.*

On November 21, Riverchase filed a stipulation to substitute its counsel in the Florida Action. Fl. Dkt. 22. On December 6, the Florida Court granted Riverchase's stipulation to substitute counsel, and the same day, Trisan filed an answer to Riverchase's amended complaint, admitting that Florida was the proper venue. Fl. Dkts. 23, 25.

On December 8, Riverchase initiated this action through the filing of the Complaint, alleging that Trisan breached the Restrictive Covenants in the Employment Agreement and violated the Delaware Uniform Trade Secrets Act ("DUTSA"). Compl. ¶¶ 34–50. Then, on January 9, 2024, in the Florida Action, Riverchase moved for leave to file a second amended complaint that would dismiss Trisan as a defendant "without prejudice, so that [Riverchase] c[ould] then file suit against her in Delaware." Fl. Dkt. 29. Trisan opposed that motion, arguing that Riverchase had waived the Exclusive Jurisdiction Provision, citing the November 3 Email. Fl. Dkts. 30, 31. Riverchase responded that its new counsel did not know about the November 3 Email. PAB at 5–6.

On January 26, Trisan filed a Motion for Partial Summary Judgment to Affirmatively Determine Jurisdiction in the Florida Action. Fl. Dkt. 35. Trisan argued that Riverchase waived the Exclusive Jurisdiction Provision through its conduct and by agreement of the parties. *Id.*

On February 23, the Florida Court entered an order granting Riverchase leave to voluntarily dismiss Trisan as a defendant without prejudice in the Florida Action (the "Dismissal Order"). PAB, Ex. 4. The Dismissal Order did not address the Exclusive Jurisdiction Provision or Trisan's arguments that Riverchase had waived it. *Id.* Instead, the Dismissal Order cited Florida Rule of Civil Procedure 1.420(a), which governs voluntary dismissal of actions. *Id.* at 1. On February 26, Riverchase

6

filed a second amended complaint in the Florida Action, asserting claims against WCB only. Fl. Dkt. 42. The Florida Court denied Trisan's motion for partial summary judgment on June 3. Fl. Dkt. 62.

On February 8, 2024, Trisan moved to dismiss the Complaint in this action under Court of Chancery Rules 12(b)(3) and 12(b)(6) (the "Motion to Dismiss").[2] This action was reassigned to me on January 8, 2025. Dkt. 19. The same day, the Court issued a minute order directing the parties to submit a status update confirming whether the Motion to Dismiss remained pending. Dkt. 20. The parties responded with a status report explaining that "Trisan's earlier request for a stay of the Delaware Action pending the Florida Court's determination of jurisdiction [wa]s moot" but that "Trisan's Motion to Dismiss for improper venue under Rule 12(b)(3) as well as Trisan's Motion to Dismiss under Rule 12(b)(6)" remained pending.[3] Dkt. 21. The Court heard oral argument on April 15, 2025. Dkt. 23.

## II. ANALYSIS

Defendant moves to dismiss the Complaint under Court of Chancery Rule 12(b)(3), arguing that Plaintiff waived the Exclusive Jurisdiction Provision, and

---

[2] Riverchase filed its answering brief in opposition to the Motion to Dismiss on March 11, 2024. On March 25, Trisan filed her reply brief. Def.'s Reply Br. in Supp. of Her Mot. to Dismiss or in the Alternative, Stay the Action [hereinafter DRB], Dkt. 13.

[3] The status report clarified that "[a]lthough the Motion to Dismiss does not so specify, [the] portion of the Motion to Dismiss [concerning enforceability of the Restrictive Covenants] is brought pursuant to Rule 12(b)(6)." Dkt. 21.

under the doctrine of *forum non conveniens*, Delaware is not the proper forum. DOB at 5, 9. Defendant also moves to dismiss the Complaint under Court of Chancery Rule 12(b)(6) for failure to state a claim on grounds that "the Restrictive Covenants of the [Employment] [A]greement are overbroad, unreasonable, and do not advance or protect the legitimate business interests of [P]laintiff." *Id.* at 15.

Because dismissal is appropriate under Rule 12(b)(3), this memorandum opinion does not address the enforceability of the Restrictive Covenants.

## A. Plaintiff Waived The Exclusive Jurisdiction Provision.

"The courts of Delaware defer to forum selection clauses and routinely 'give effect to the terms of private agreements to resolve disputes in a designated judicial forum out of respect for the parties' contractual designation.'" *Ashall Homes Ltd. v. ROK Ent. Gp. Inc.*, 992 A.2d 1239, 1245 (Del. Ch. Apr. 23, 2010) (quoting *Troy Corp. v. Schoon*, 2007 WL 949441, at *2 (Del. Ch. Mar. 26, 2007)). Defendant argues, however, that the Court should not defer to the Exclusive Jurisdiction Provision here because Plaintiff waived it.

"Under Delaware law, a waiver is 'the voluntary and intentional relinquishment of a known right.'" *Dirienzo v. Steel P'rs Hldgs. L.P.*, 2009 WL 4652944, at *4 (Del. Ch. Dec. 8, 2009) (quoting *Realty Growth Invs. v. Council of Unit Owners*, 453 A.2d 450, 456 (Del. 1982)). "A waiver may be express or implied,

8

but either way, it must be unequivocal." *Id.* (citing *Rose v. Cadillac Fairview Shopping Ctr. Props. (Del.), Inc.*, 668 A.2d 782, 786 n.1 (Del. Super. 1995)).

Defendant argues that Plaintiff waived the Exclusive Jurisdiction Provision (1) expressly in the November 3 Email and (2) implicitly by first filing its claims in Florida Court. Both arguments have merit.

First, Plaintiff and Defendant expressly agreed to waive the Exclusive Jurisdiction Provision in the November 3 Email. "An express waiver exists where it is clear from the language used that the party is intentionally renouncing a right that it is aware of." *Id.* In the November 3 Email, Plaintiff's counsel asked if Defendant "w[ould] agree to litigate in Florida," and Defendant's counsel confirmed that she "w[ould] agree [to] waive the . . . Delaware jurisdictional requirements of the employment contract." PAB, Ex. 6. Although Plaintiff now contends that such agreement was conditioned on reaching a settlement, that argument is belied by the fact that the next month, Defendant filed an answer in the Florida Action admitting that the Florida Court was the proper venue. PAB at 12; Fl. Dkt. 25.

Second, even if Plaintiff had not expressly waived the Exclusive Jurisdiction Provision in the November 3 Email, Plaintiff implicitly waived the Exclusive Jurisdiction Provision by bringing its claims in Florida Court. "Where no express language is used, an implied waiver of a right is possible . . . if there is 'a clear, unequivocal, and decisive act of the party demonstrating relinquishment of the

9

right.'" *Dirienzo*, 2009 WL 4652944, at *5 (quoting 28 AM. JUR. 2D *Estoppel and Waiver* § 209 (2009)). Plaintiff clearly and unequivocally relinquished its rights under the Exclusive Jurisdiction Provision by pursuing nearly identical claims in Florida Court for seven months before eventually deciding to bring those claims in Delaware instead. In that time, Defendant moved to dismiss, Plaintiff amended its complaint, Defendant filed an answer, and the parties served written discovery. Fl. Dkts. 3–6, 14, 16, 18–20, 25. Plaintiff's decision to file the Florida Action and pursue its claims in Florida Court for seven months was clearly and unequivocally inconsistent with Plaintiff's rights under the Exclusive Jurisdiction Provision.[4]

Plaintiff argues that simply filing a lawsuit in the wrong forum is not enough to waive a forum selection provision.[5] PAB at 10–11. Rather, it urges that this Court

---

[4] Plaintiff claims Defendant "enticed Riverchase to engage in the so-called 'litigation activity'" by promising to produce her client lists, PAB at 8, but Plaintiff—not Defendant—chose to file and litigate its claims in Florida Court.

[5] Plaintiff does not identify any cases outside of the arbitration context in which this Court has considered whether filing in the wrong forum will waive a forum selection clause. *But see Genex Cap. Corp. v. Keefer*, C.A. No. 2021-0267-NAC (Del. Ch. Apr. 26, 2021) (TRANSCRIPT) (rejecting the argument that "plaintiff waived its right to enforce the forum selection clause by first filing another action in [another forum]" where the prior lawsuit "appear[ed] on [the] limited record to concern parties not bound by the [a]greements or the forum selection clause at issue"); *Village Green Hldgs., LLC v. Holtzman*, 2018 WL 4849964, at *7 (Del. Ch. Oct. 5, 2018) (rejecting an argument that the plaintiff waived its right to enforce a forum selection clause by litigating an action in another forum where the actions involved "legally distinct entities and agreements"). Other jurisdictions have found that filing in the wrong forum can waive a forum selection clause. *See, e.g., MTR Gaming*

10

will not find waiver in the absence of prejudice, "such as when both parties had engaged in extensive discovery in the wrong forum." *Id.* at 11 (citing *Halpern Med. Servs., LLC v. Geary*, 2012 WL 691623, at *3 (Del. Ch. Feb. 17, 2012)). To support that position, Plaintiff points to cases analyzing arbitration provisions.[6] Given Delaware's strong public policy favoring arbitration,[7] "[w]hen considering whether a party implicitly waived its right to arbitration, the Court considers 'not merely the inconsistency of a party's actions, but the presence or absence of prejudice which is determinative of the issue of waiver.'" *Friddle*, 2024 WL 493536, at *8 (quoting *Halpern*, 2012 WL 691623, at *3). But the same policy concerns are not in play

<hr>

*Gp., Inc. v. Arneault*, 899 F. Supp. 2d 367, 375 (W.D. Pa. 2012) ("When a party chooses to file suit upon a contract in an unauthorized venue in direct contravention to the contract's forum selection clause, it is not surprising that courts would infer the party's abandonment of its rights under the forum selection provision."); *Unity Creations, Inc. v. Trafcon Indus., Inc,* 137 F. Supp. 2d 108, 111 (E.D.N.Y. 2001) ("[W]hen a party disregards a forum selection clause and sues on a contract in an unauthorized forum, it waives the forum selection clause on the claims it pursues."); *Building Constr. Enters., Inc. v. Gary Meadows Constr. Co., Inc.*, 2007 WL 1041003, at *4 (E.D. Ark. Apr. 4, 2007) ("Furthermore, the Court agrees that Plaintiff waived its right to have the action adjudicated in Jackson County, Missouri by electing to file its Complaint in this Court.").

[6] *See, e.g.*, *Gandhi-Kapoor v. Hone Cap. LLC*, 307 A.3d 328 (Del. Ch. 2023); *Halpern*, 2012 WL 691623; *Dorsey v. Nationwide Gen. Ins.*, 1989 WL 102493 (Del. Ch. Sept. 8, 1989); *Falcon Steel Co. v. Weber Eng'g Co., Inc.*, 517 A.2d 281 (Del. Ch. 1986).

[7] *See Halpern*, 2012 WL 691623, at *3 (explaining that there is a "strong public policy favoring arbitration," so "waiver is not to be lightly inferred" (quoting *Dorsey*, 1989 WL 102493, at *1)); *see also, e.g.*, *Friddle v. Moehle*, 2024 WL 493536, at *6 (Del. Ch. Feb. 8, 2024) ("Arbitration is strongly favored under Delaware law and policy" (citing *Fraternal Ord. of Police Del. Lodge 10 v. Delaware*, 2017 WL 6055375, at *2 (Del. Ch. Dec. 7, 2017)); *Fraternal Ord.*, 2017 WL 6055375, at *2 ("[F]avoring arbitration is a clearly defined public policy under Delaware law.").

when parties with no connection to this state select Delaware courts to adjudicate restrictive covenant disputes.[8]  In any event, even if prejudice were needed to find implicit waiver, Plaintiff is wrong that "nothing of substance" occurred in the Florida Action.  PAB at 11.  Plaintiff's attempt to shop for forums after litigating in the Florida Court for seven months is prejudice enough to support implicit waiver.

If Plaintiff had not waived the Exclusive Jurisdiction Provision, the Court's analysis would stop here.  *See AlixPartners, LLP v. Mori*, 2019 WL 6327325, at \*12 (Del. Ch. Nov. 26, 2019) (explaining that "the *forum non conveniens* doctrine is a rule of common law that parties are free to displace by a valid contractual agreement").  But because Plaintiff waived the Exclusive Jurisdiction Provision, I next consider whether this Court is the appropriate forum under the doctrine of *forum non conveniens*.

### B.  Delaware Is Not The Appropriate Forum Under The Doctrine Of *Forum Non Conveniens*.

Defendant seeks dismissal of this action under the doctrine of *forum non conveniens*.  In briefing, Plaintiff argued that it did not waive the Exclusive Jurisdiction Provision, but did not otherwise respond to Defendant's arguments for

---

[8] *See Sunder Energy, LLC v. Jackson*, 305 A.3d 723, 731 (Del. Ch. 2023) (noting that "the Court of Chancery will never have sufficient resources to adjudicate restrictive covenant cases for [] entities throughout the world"), *rev'd in part on other grounds*, 332 A.3d 472 (Del. 2024).

12

dismissal on *forum non conveniens* grounds.  Although Plaintiff arguably waived its opposition to Defendant's *forum non conveniens* arguments by failing to brief them,[9] I nevertheless consider the issue on the merits, concluding that Delaware is not the appropriate forum.

"Courts traditionally dismiss a matter under Rule 12(b)(3) . . . when, applying the doctrine of *forum non conveniens*, Delaware is clearly not the appropriate forum for litigation."  *Lefkowitz v. HWF Hldgs., LLC*, 2009 WL 3806299, at *3 (Del. Ch. Nov. 13, 2009) (citing *Parvin v. Kaufmann*, 236 A.2d 425, 427 (Del. 1967)). "Delaware courts analyze *forum non conveniens* issues by balancing the so-called '*Cryo-Maid* factors.'"  *Hamilton P'rs, L.P. v. Englard*, 11 A.3d 1180, 1212 (Del. Ch. 2010) (citing *General Foods Corp. v. Cryo-Maid, Inc.*, 198 A.2d 681, 684 (Del. 1964)).  The factors are:

> (1) The applicability of Delaware law;
>
> (2) The relative ease of access of proof;
>
> (3) The availability of compulsory process for witnesses;
>
> (4) The pendency or non-pendency of a similar action or actions in another jurisdiction;
>
> (5) The possibility of a need to view the premises; and

---

[9] *See, e.g.*, *Emerald P'rs v. Berlin*, 726 A.2d 1215, 1224 (Del. 1999) ("Issues not briefed are deemed waived").

13

(6) All other practical considerations that would make the trial easy, expeditious, and inexpensive.

*Aveta, Inc. v. Colon*, 942 A.2d 603, 609 (Del. Ch. 2008) (citing *Ryan v. Gifford*, 918 A.2d 341, 351 (Del. Ch. 2007)).

"[O]nly in a 'rare case' will a complaint filed in Delaware be dismissed on the grounds of *forum non conveniens*," which "comports with the notion that '[m]ost corporate litigation in the Court of Chancery involves companies and documents located outside of Delaware, and [so] mere inconvenience, without more, does not warrant a stay or dismissal.'" *Maric Healthcare, LLC v. Guerrero*, 2024 WL 2993336, at *4 (Del. Ch. June 14, 2024) (first quoting *Mar-Land Indus. Contr., Inc. v. Caribbean Petroleum Ref., L.P.*, 777 A.2d 774, 778 (Del. 2001); and then quoting *Harris v. Harris*, 2023 WL 355179, at *12 (Del. Ch. Jan. 23, 2023)). Even so, the *Cryo-Maid* factors confirm that Delaware is not the appropriate forum for this dispute.

### 1. Delaware's Interest In The Dispute

Under the first *Cryo-Maid* factor, the question is "whether or not the controversy is dependent upon the application of Delaware law which the courts of this State more properly should decide than those of another jurisdiction." *Cryo-Maid*, 198 A.2d at 684. "Choice of law under *Cryo-Maid* operates as a proxy for Delaware's interests, and the analysis must address the degree to which Delaware has a particular interest in the subject matter of the case." *Hamilton P'rs*, 11 A.3d

14

at 1213. "It therefore includes considerations such as the nature and novelty of questions of law to be answered, the desirability of providing a Delaware forum, and the importance of overseeing the conduct of particular classes of actors and policing against particular types of wrongdoing." *Id.*

In this case, the Employment Agreement chooses Delaware law to govern, but the issues presented are not novel, nor do they involve the internal affairs of a Delaware entity. Aside from the choice of Delaware law, Delaware has no interest in the dispute. Plaintiff is a Florida corporation, Defendant is a Florida resident, the contract at issue was signed in Florida, and all relevant conduct, including the alleged breach, occurred in Florida. *See Focus Fin. P'rs, LLC v. Holsopple*, 250 A.3d 939, 975 (Del. Ch. 2020) (explaining that the parties "should litigate this case in California" where "[d]uring his employment, [the defendant] lived in California and performed a majority of his work there").[10] The first *Cryo-Maid* factor weighs against retaining jurisdiction.

---

[10] As for Plaintiff's claim under DUTSA, "Delaware law presumes that 'a law is not intended to apply outside the territorial jurisdiction of the State in which it is enacted.'" *Focus Fin. P'rs, LLC*, 250 A.3d at 970 (quoting *Singer v. Magnavox Co.*, 380 A.2d 969, 981 (Del. 1977), *overruled on other grounds by Weinberger v. UOP, Inc.*, 457 A.2d 701 (Del. 1983)). "[A]bsent clear legislative intent, it is 'impermissible to punish an individual under Delaware law for an action occurring exclusively in another state.'" *Id.* (quoting *J.E. Rhoads & Sons, Inc. v. Ammeraal, Inc.*, 1988 WL 116423, at *2 (Del. Super. Oct. 21, 1988)). "DUTSA lacks any indication that the legislature intended for it to apply outside the territorial jurisdiction of Delaware, and [Plaintiff] has not cited any conduct that took place in Delaware." *Id.*

### 2. Access To Proof

The second *Cryo-Maid* factor, access to proof, weighs in favor of a Florida forum. While this factor has become less significant for corporate and commercial disputes, "[i]t continues to have salience for disputes involving parties with limited resources." *Hamilton P'rs*, 11 A.3d at 1214; *see, e.g.*, *Aveta*, 942 A.2d at 612–13 (explaining that when "considering the relative size and resources" of the defendant, "[a] court of equity may not willfully ignore substantial issues of fairness"). Defendant, a physician assistant, will face a substantial hardship if she must incur the expense of trying this case in Delaware, since most—likely all—witnesses are located in Florida. DOB at 11. The second *Cryo-Maid* factor weighs in favor of a Florida forum.

### 3. Compulsory Process

Relatedly, the third *Cryo-Maid* factor, the availability of compulsory process, also weighs in favor of a Florida forum. The patients Defendant expects to testify at trial are located in Florida. *Id.* at 11. Although it is possible that some could voluntarily appear, Defendant "would face significant difficulty in presenting evidence in Delaware" because this Court cannot compel the witnesses'

attendance.[11] *Aveta*, 942 A.2d at 614. Florida, on the other hand, "would provide a substantial improvement as to the number of witnesses who would be subject to compulsory process." *Id.* at 613 (quoting *Friedman v. Alcatel Alsthom*, 752 A.2d 544, 554 (Del. Ch. 1999), *overruled in part on other grounds by Martinez v. E.I. DuPont de Nemours and Co., Inc.*, 86 A.3d 1102 (Del. 2014)). While "[t]he court can allow the deposition testimony of these individuals, should they refuse to appear at trial in Delaware, to be admitted into evidence," *Brandin v. Deason*, 941 A.2d 1020, 1025–26 (Del. Ch. 2007) (citing Ct. Ch. R. 32(a)), "depositions serve as poor proxies for live testimony because the fact finder loses the opportunity to effectively and contemporaneously evaluate the credibility of the witness." *Aveta*, 942 A.2d at 612. This factor also weighs in favor of a Florida forum.

### 4. The Existence Of A Similar Pending Action

Under the fourth *Cryo-Maid* factor, the Court considers the existence of a similar action in another jurisdiction. "[W]ithout such other pending action, judicial discretion is to be exercised sparingly in favor of dismissal." *In re Asbestos Litig.*, 929 A.2d 373, 387 (Del. Super. Mar. 8, 2006) (first citing *Taylor v. LSI Logic Corp.*,

---

[11] *See Barrera v. Monsanto Co.*, 2016 WL 4938876, at *6 (Del. Super. Sept. 13, 2016) ("Defendant correctly notes that [the Delaware] Court does not have the power to compel the testimony at trial of third-party witnesses who . . . are located in other states."); *Ward v. Tishman Hotel & Realty, L.P.*, 2010 WL 5313549, at *3 (explaining that the Delaware court has no compulsory subpoena power over potential witnesses in Pennsylvania and Puerto Rico); Ct. Ch. R. 45.

689 A.2d 1196, 1199 (Del. 1997); and then citing *Fres-Co Sys. USA, Inc. v. The Coffee Bean Trading-Roasting, LLC*, 2005 WL 1950802, at *3 (Del. Super. July 22, 2005)). "If a [p]rior [a]ction once existed but no longer is pending, then the Delaware court conducts a straightforward assessment of the *Cryo-Maid* factors to determine where it makes the most sense for the action to proceed." *Harris*, 2023 WL 355179, at *8.

Plaintiff has voluntarily dismissed its claims against Defendant in the Florida Action, although that action remains pending against WCB. The fact that no other action is currently pending against Defendant weighs against dismissal. On the other hand, the fact that Plaintiff pursued its claims against Defendant in the Florida Action for seven months before dismissing them while this Motion was pending weighs in favor of dismissal, as Delaware courts "discourage[] forum shopping." *Kurtin v. KRE, LLC*, 2005 WL 1200188, at *7 (Del. Ch. May 16, 2005). So, on balance, this factor weighs against dismissal, but it is not dispositive.

### 5. Other Relevant Factors

"The final *Cryo-Maid* factor allows a court to take into account any other factors that might affect the *forum non conveniens* analysis." *Hamilton P'rs*, 11 A.3d at 1217. "Delaware lacks a public policy interest in the outcome of the legal issues presented by this case." *Focus Fin. P'rs, LLC*, 250 A.3d at 972 (citing *Nokia Sols. & Networks Oy v. Collision Comm'cns, Inc.*, 2020 WL 2095829, at *6 (Del.

18

Super. Apr. 30, 2020)). Florida, on the other hand, has a significant interest in resolving issues implicating access to medical care, "an area rife with public policy concerns." *Aveta*, 942 A.2d at 614. Indeed, "[t]he contract at the center of this dispute purports to limit the ability of [a physician assistant] to associate [herself] with competing health care providers and to prohibit [her] from inducing or encouraging [her] patients to switch providers." *Id.* at 615. While "Delaware has no interest in [the] dispute," Florida "certainly has an interest in ascertaining and applying its own public policy" in this area. *Id.*

Florida "also maintains a more compelling public policy interest in ensuring its laws are enforced with respect to the employment rights of its citizens working within the state." *AG Res. Hldgs., LLC v. Terral*, 2021 WL 486831, at *5 (Del. Ch. Feb. 10, 2021). "This case presents the type of setting where a Delaware court should defer to the courts of a sister state." *Focus Fin. P'rs, LLC*, 250 A.3d at 972 (citing *Diedenhofen-Lennartz v. Diedenhofen*, 931 A.2d 439, 451–52 (Del. Ch. 2007)).

### 6. Balancing The Factors

"When evaluating a motion to dismiss under the doctrine of *forum non conveniens*, this court must evaluate the *Cryo-Maid* factors in their totality to determine whether they weigh heavily and decisively against litigating in this forum." *Id.* at 975. In this case, they do. Balancing all the *Cryo-Maid* factors, I

19

conclude that Delaware is not the appropriate forum. Accordingly, the Motion to Dismiss under Rule 12(b)(3) is granted.

## III.  CONCLUSION

For the reasons explained above, the Motion to Dismiss is GRANTED and the Complaint is DISMISSED.